**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30912

Summary Calendar.

Robbie A. VIATOR, individually and on behalf of all persons
similarly situated;  Donie R. Harmon, individually and on behalf of
all persons similarly situated;  Pamela S. Barbry, individually and
on behalf of all persons similarly situated;  Richard D. Keith;
Patricia Douglas;  Angela Romero;  Donald Fontenot;  Gerald Lee;
Odelia Louise Tate;  Dina Lopez;  Michael Joseph Trahan;  Angela R.
Lopez;  Steven Paul Johnson;  Everett Paul Marshall;  Gary Chester;
Kevin B. Matte;  Cynthia L. Rougeau;  David Lee Patton;  Bradley
Fontenot;  Tracy Barnes;  Frank Berlin;  Kathleen Crich;  Nancy H.
Bimle, Plaintiffs-Appellants,

v.

DELCHAMPS INCORPORATED, Defendant-Appellee.

April 15, 1997.

Appeal from the United States District Court for the Western
District of Louisiana.

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

Appellants, all previously employed by the grocery store chain
Delchamps, Inc. in and around Lake Charles, Louisiana, filed the
current class action lawsuit, alleging Delchamps violated the
Worker's Adjustment Retraining and Notification Act ("WARN"), 29
U.S.C. §§ 2101-2109 (1994), by failing to provide them with sixty
days notice prior to Delchamps' closing of its three area stores.
The district court granted summary judgment in favor of Delchamps,
concluding that Delchamps' three Lake Charles-area stores did not
constitute a "single site of employment" under WARN and, therefore,
that the stores did not employ enough workers to come within the

scope of the Act. We affirm.

I.

In the six months preceding February 17, 1985, Delchamps opened three grocery stores in the greater Lake Charles area. All of the stores were located in Calcasieu Parish, Louisiana, two in the city of Lake Charles and the other in nearby Sulphur, Louisiana. The three stores were located within approximately twelve miles of each other and all had the same 33,387 square foot floor plan. Shortly after the three Lake Charles-area stores were opened, Delchamps initiated a coordinated six-month advertising campaign for the stores in the local paper.

Summary judgment evidence established that approximately twenty-seven employees, out of a total of eighty-eight persons employed by the three stores over a ten-year period, had been permanently transferred between stores on at least one occasion. Some eighteen employees had been temporarily transferred between stores during the thirty-one weeks preceding the closures as a result of loss of an employee, employee sickness or vacation, or similar employment needs. Similarly, limited transfers of inventory between the three stores were not uncommon. The evidence established that Delchamps would occasionally transfer some inventory between the stores whenever necessary to assist with a temporary shortage in one of the stores.

However, further summary judgment evidence established that each store prepared its own weekly sales report; had its own profit/loss statements; determined its own product needs and placed its own resupply orders; had its own management staff

(except for the two months preceding the closures when the stores shared a common store manager); had its own payroll and maintained its own employees; and hired, fired, and disciplined its own workers. Delchamps also made sure that whenever an employee transfer occurred, the transferring employee's pay came from the temporary place of employment, rather than from the employee's base store. Similarly, Delchamps carefully kept track of all inventory transfers and made sure that such inventory was either carried on the books of the receiving store or traded in exchange for other merchandise.

On February 14, 1995, as part of a larger reduction brought on by declining sales and profits, Delchamps announced its intent to close its three Lake Charles-area stores by the end of the month. The stores were closed on February 28, 1995. Employees of the Lake Charles-area stores who did not accept Delchamps offer to transfer to other stores were discharged.

On May 4, 1995, appellants filed the present lawsuit. The district court granted summary judgment in favor of Delchamps. The primary issue the court considered was whether the three Lake Charles-area stores constituted a "single site of employment" as defined by WARN and applicable Department of Labor ("DOL") regulations. The court concluded that under the DOL's regulations, the stores could not be considered a single site of employment. Because none of the individual stores employed the statutory minimum of fifty full-time employees, the district court held that WARN does not apply to the closings. Appellants timely appealed.

II.

We review the district court's grant of summary judgment de novo. *Carpenters District Council of New Orleans & Vicinity v. Dillard Dept. Stores, Inc.,* 15 F.3d 1275, 1281 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 933, 130 L.Ed.2d 879 (1994); *FDIC v. Myers,* 955 F.2d 348, 349 (5th Cir.1992). The issue of whether multiple work locations constitute a "single site of employment" under WARN is a mixed question of law and fact. *Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 934 (5th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 582, 130 L.Ed.2d 497 (1994). Accordingly, we review the district court's application of law de novo, *Carpenters District Council,* 15 F.3d at 1281; *United States v. Long,* 996 F.2d 731, 732 (5th Cir.1993), while reviewing the court's findings of facts for clear error. *Carpenters District Council,* 15 F.3d at 1281; Fed.R.Civ.P. 52(a).

WARN requires covered employers to notify "affected employees" of a "mass layoff." "Affected employees" are defined as "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer." 29 U.S.C. § 2101(a)(5). A "mass layoff" includes any employment loss at a single site of employment which involves one-third of the employees at that site and at least fifty employees, or alternatively, at least five hundred employees. 29 U.S.C. § 2101(a)(3). When such a layoff occurs, the employer must provide at least sixty days written notice to each affected employee and notify various state and local officials of the

impending layoff.  29 U.S.C. § 2102.  An employer who fails to provide such notice is liable for back pay, lost benefits, civil penalties, and attorneys fees.  29 U.S.C. § 2104.

While WARN does not specifically define what constitutes a single site of employment, the DOL regulations do.  These regulations provide in relevant part:

(3) *Separate buildings or areas which are not directly connected or in immediate proximity may be considered a single site of employment if they are in reasonable geographic proximity, used for the same purpose, and share the same staff and equipment.*  An example is an employer who manages a number of warehouses in an area but who *regularly* shifts or rotates the same employees from one building to another.

(4) *Non-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site.*  For example, assembly plants which are located on opposite sides of town and which are managed by a single employer may be considered separate sites if they employ different workers.

20 C.F.R. § 639.3(i) (1996) (emphasis added).  Moreover, the DOL made clear in its analysis of its implementing regulations that "[t]he general rule is that separate facilities are separate sites."  54 Fed.Reg. ¶ 16,050 (April 21, 1989).  The DOL further added that exceptions to the general rule are "narrow" and limited to cases where geographically distinct sites have an "inextricable operational purpose."  *Id.* at ¶ 16, 049.  As we observed in *Williams,* "[t]he regulations indicate that two plants across town will rarely be considered a single site for purposes of a mass layoff."  *Williams,* 23 F.3d at 934.

Based on the DOL's regulations and our case law, we conclude that separate facilities are only to be treated as a single site of employment if all three factors identified in the regulations are met, namely:  1) the separate facilities are in "reasonable

geographic proximity" of one another;  2) they are "used for the same purpose";  3) and they "share the same staff and equipment." 20 C.F.R. § 639.3(i)(3).  Any other reading would be inconsistent with the plain language of the regulation.

Because we agree with the district court that the three stores did not share the same staff or equipment, we need not address the other factors and express no view on the district court's resolution of these issues.  We will consider separately the questions of whether the three Delchamps stores shared the same staff or equipment.

C.

Appellants have adduced evidence that roughly 30 percent of full-time employees at the Lake Charles-area stores had been permanently transferred between stores at least once during a ten-year period.  There is also evidence that in the thirty-one weeks leading up to the closures, roughly 20 percent of the total employees of the three stores had been transferred on a temporary basis to assist with temporary employment shortages in other stores.  Such temporary transfers appear to have been of short duration, ranging between a few hours to, in at least one instance, just over six weeks.

However, uncontroverted summary judgment evidence established that each of the stores employed and controlled its own workforce and that at no time did the stores employ workers in common.  To the contrary, the record establishes that Delchamps took pains to ensure that any transferred employee was paid by the temporary store, rather than the employee's base store.  In short, there is

simply no evidence that the stores routinely shifted the "same employees" between the sites.

Even assuming these transfers constitute "sharing" of employees as envisioned by the regulations, the relatively small number of these transfers suggest that they do not rise to a sufficient level to consider the stores a single site of employment. The regulations strongly suggest that WARN only applies if an employer "regularly shifts or rotates the same employees from one building to another." 20 C.F.R. § 639.3(i)(3). In other words, occasional intermingling of various employees is insufficient to place an employer within the act's coverage. *See, e.g., Frymire v. Ampex Corp.,* 61 F.3d 757, 767 (10th Cir.1995) ("[E]ven assuming transfers did occur frequently, we cannot equate this phenomenon with the "shifting,' "rotating' or even "sharing' of employees that defines a non-"separate' workforce.") (citations omitted); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1281 (8th Cir.1996) ("[O]ccasional transfers of employees and office equipment ... does not establish the necessary connection between locations to constitute a single site.") *Hooper v. Polychrome, Inc.,* 916 F.Supp. 1111, 1117 (D.Kan.1996) ("[E]ven assuming that a significant number of employees of either facility spent a portion of their time at the other facility, we cannot equate this periodic occurrence with the "shifting,' "rotating' or even "sharing' of employees of a non-"separate' workforce....").

The regulations also state by way of example that facilities located on opposite sides of a town should be considered separate sites of employment if they employ "different workers." 20 C.F.R.

§ 639.3(i)(4). Here, it is undisputed that nearly 70 percent of the total combined workers of the three stores over a ten year period were never permanently transferred between stores. An even greater number were never transferred on a temporary basis. Combined with the fact that no employee was ever paid at one store for work performed at another, these numbers convince us that each Delchamps store employed "different workers" within the meaning of the DOL's regulations.

D.

The same conclusion applies to appellants' claims that the stores routinely shared equipment. The only piece of equipment appellants have pointed to as being used commonly between the three stores is a single pressure washer. Appellants also point to several instances where produce or other inventory was transferred between stores when one store had a need and the other a surplus. Even assuming these occasional transfers of inventory are significant for purposes of the regulations, the record establishes that these transfers were either closely documented and accounted for on each store's separate books, or the inventory was traded for other merchandise. *See, e.g., Rifkin,* 78 F.3d at 1281 ("[O]ccasional transfers of employees and office equipment between the different sites ... does not establish the necessary connection between locations to constitute a "single site.' There is no evidence that employees and equipment are regularly shared as opposed to occasionally transferred."); *Hooper,* 916 F.Supp. at 1117 ("[W]e do not believe that the use of isolated pieces of equipment ... mandates a determination of "single site' status.").

Under the circumstances we find no support for the conclusion that the stores regularly shared equipment.

## III.

Because appellants have failed to produce competent summary judgment evidence establishing that Delchamps' three Lake Charles-area stores regularly shared the same staff or equipment, their WARN claims must fail. Accordingly, the order of the district court granting summary judgment in favor of Delchamps is AFFIRMED.

AFFIRMED.