**REVISED**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 96-31071**

---

**GREG E. CRAWFORD,**

**Plaintiff-Appellee,**

**VERSUS**

**FALCON DRILLING COMPANY, INCORPORATED,**

**Defendant-Appellant.**

---

**Appeal from the United States District Court**
**For the Western District of Louisiana**

---

**December 18, 1997**

Before DeMOSS and DENNIS, Circuit Judges, and LEE, District Judge.[*]

DeMOSS, Circuit Judge:

In ***Gautreaux v. Scurlock Marine, Inc.***, 107 F.3d 331 (5th Cir. 1997) (en banc), we signaled a sea change in our Court's Jones Act jurisprudence. The present appeal arises from a maritime injury case tried under pre-***Gautreaux*** standards of Jones Act negligence. We must decide what effect, if any, our decision in ***Gautreaux*** has on this direct appeal. Finding plain error with respect to the liability, we vacate that aspect of the judgment of the district

---

[*] Chief Judge of the Southern District of Mississippi, sitting by designation.

court and remand for reconsideration in light of *Gautreaux*.

We are also asked to review the district court's award of damages. Because the district court's assessment of Crawford's damages was not clearly erroneous, that aspect of the judgment is affirmed.


I.

Greg Crawford suffered a back injury aboard the PHOENIX V, a jack-up drilling vessel. He claims, and the district court found, that the injury was caused by an accident that occurred while he was working as a derrickman on the PHOENIX V.[1] HE FILED SUIT TO RECOVER DAMAGES UNDER THE JONES ACT AGAINST HIS EMPLOYER, FALCON DRILLING.

AT THE TIME OF THE ACCIDENT, CRAWFORD'S CREW WAS ENGAGED IN A PRACTICE KNOWN AS "TRIPPING PIPE OUT OF THE HOLE." THE DRILL'S BIT HAD TO BE CHANGED, AND TRIPPING PIPE OUT OF THE HOLE INVOLVED PULLING OUT ALL OF THE PIPE BETWEEN THE SURFACE AND THE BOTTOM OF THE HOLE IN ORDER TO REACH THE BIT. THE PROCESS INVOLVED THE COORDINATION OF THE MEMBERS OF THE DRILL CREW: THE DRILLER; THE THREE DRILL HANDS; AND THE DERRICKMAN (IN THIS CASE, CRAWFORD).

FIRST, THE DRILL HANDS ATTACH AN ELEVATOR TO THE TOP PORTION OF THE PIPE. THE DRILLER, WHO IS IN CHARGE OF THE OPERATION, THEN ENGAGES THE DRAW WORKS. A "STAND" OF PIPE[2] IS THEN PULLED UP AND OUT OF THE HOLE, EXPOSING THE JOINT WITH THE

---

[1] The facts surrounding the accident which the district court determined caused Crawford's injuries are very complicated. For our immediate purpose, however, the summary set out in the main text will suffice. Quoted material in this section of the opinion is taken from the district court's findings of fact.

[2] A "stand" consists of "[t]hree joints of pipe, each approximately 31 feet in length or a total of approximately 93 feet."

NEXT STAND. THE DRILL HANDS SET SLIPS AROUND THE NEXT STAND TO HOLD IT IN PLACE, AND THEY THEN UNSCREW THE STANDS TO SEPARATE THEM AT THAT JOINT.

AT THIS POINT, THE SEPARATED STAND OF PIPE IS READY TO BE PLACED IN THE PIPE RACK. THE DRILLER LIFTS THE STAND A FEW FEET, AND THE DRILL HANDS THEN PUSH THE BOTTOM OF THE STAND INTO THE RACK. THE DRILLER THEN LOWERS THE STAND SO THAT THE BOTTOM IS IN ITS PLACE IN THE RACK.

NEXT, THE DERRICKMAN DOES HIS JOB. THE DERRICKMAN IS POSITIONED ON A MONKEYBOARD HIGH IN THE AIR ON THE DERRICK, SUCH THAT HE CAN REACH THE ELEVATORS ATTACHED TO THE TOP OF THE STAND AS THE DRILL HANDS POSITION THE BOTTOM OF THE STAND IN THE PIPE RACK. HE HAS A PULL-BACK ROPE WHICH HE FLIPS AROUND THE STAND, PULLING THE TOP TOWARD HIM WITH HIS RIGHT HAND. WHEN THE BOTTOM OF THE STAND TOUCHES THE FLOOR IN ITS POSITION IN THE PIPE RACK, THE DERRICKMAN REACHES UP AND UNLATCHES THE ELEVATOR WITH HIS LEFT HAND. HE THEN PULLS THE TOP OF THE STAND WITH BOTH HANDS SO THAT HE CAN PUT IT IN ITS PLACE IN THE PIPE RACK. THE ENTIRE PROCESS IS THEN REPEATED UNTIL ALL OF THE PIPE HAS COME OUT OF THE HOLE.

THE STAND OF PIPE WHICH CAUSED CRAWFORD'S INJURY WEIGHED BETWEEN SEVEN AND EIGHT THOUSAND POUNDS. THE SERIES OF STANDS TRIPPED OUT OF THE HOLE IMMEDIATELY BEFORE THIS STAND HAD BEEN BOTH LIGHTER AND SHORTER. AS CRAWFORD RELEASED THE ELEVATORS ON THE LIGHTER STANDS, EACH OF THEM FELL TOWARD HIS LEFT. CRAWFORD THUS POSITIONED HIS BODY TO TAKE ADVANTAGE OF THE STANDS' MOMENTUM AND GUIDE THEM INTO THE PIPE RACK.

CRAWFORD WAS INJURED WHEN A STAND OF PIPE FELL TO THE RIGHT WHEN HE EXPECTED IT TO FALL TO THE LEFT. THE DISTRICT COURT FOUND THAT THIS UNEXPECTED CHANGE RESULTED FROM "THE FLOOR HANDS IMPROPERLY POSITIONING THE BOTTOM OF THE DRILL PIPE ON THE PIPE RACK FLOOR AND THE DRILLER SETTING THE IMPROPERLY POSITIONED DRILL PIPE DOWN ON THE PIPE RACK FLOOR." THE STAND'S FALL TO THE RIGHT CAUGHT CRAWFORD OFF-

GUARD, AND THE GRAVITY OF THE SITUATION WAS COMPOUNDED BY CRAWFORD'S ADVANCE POSITIONING OF HIMSELF TO ACCOMMODATE A LEFTWARD-FALLING STAND. IN HIS ATTEMPT TO PULL THE MASSIVE STAND OF PIPE INTO THE PIPE RACK, CRAWFORD SERIOUSLY INJURED HIS BACK.

CRAWFORD SUED FALCON DRILLING FOR DAMAGES. THE DISTRICT COURT FOUND FALCON DRILLING LIABLE FOR CRAWFORD'S INJURIES. IT ALSO FOUND THAT CRAWFORD WAS NOT CONTRIBUTORILY NEGLIGENT WITH RESPECT TO THE ACCIDENT. JUDGMENT WAS ENTERED IN CRAWFORD'S FAVOR IN THE AMOUNT OF $563,190.91. FALCON DRILLING APPEALS.

## II.

OUR COURT'S EN BANC DECISION IN *GAUTREAUX* HAD NOT BEEN ANNOUNCED AT THE TIME OF THE BENCH TRIAL IN THIS CASE. NATURALLY, THERE WAS NO OBJECTION TO THE DISTRICT COURT'S CONCLUSIONS OF LAW REGARDING THE STANDARDS OF NEGLIGENCE TO BE APPLIED TO THE RESPECTIVE PARTIES.

IT IS A FAMILIAR RULE THAT "[O]RDINARILY A PARTY MAY NOT PRESENT A WHOLLY NEW ISSUE IN A REVIEWING COURT." 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2588, at 599 (2d ed. 1995); *see also* **Helvering v. Wood**, 309 U.S. 344, 349 (1940); **United States v. Calverley**, 37 F.3d 160, 162 (5th Cir. 1994) (en banc), *cert. denied*, 513 U.S. 1196 (1995). It is equally well established, however, that an exception to the general rule allows our Court to review an issue of law raised for the first time on appeal in exceptional circumstances. Most of our older precedent in this area frames the standard for applying the exception as a question of whether there was "a miscarriage of justice." *See, e.g.,* **Noritake Co. v. M/V Hellenic Champion**, 627 F.2d 724, 732 (5th Cir. Unit A 1980); *see*

-4-

*also* 9A WRIGHT & MILLER, *supra*, § 2588. Our case law has drifted from these early moorings, however, and more recently our Court has adopted the practice of reviewing unpreserved error in a civil case using the plain-error standard of review. *See, e.g.*, **Douglass v. United Servs. Auto. Ass'n**, 79 F.3d 1415, 1424 (5th Cir. 1996) (en banc) (plain-error rule applies when the appellant failed to object to a magistrate judge's report and recommendations); **Highlands Ins. Co. v. National Union Fire Ins. Co.**, 27 F.3d 1027, 1032 (5th Cir. 1994) (plain-error standards govern an allegedly erroneous jury charge), *cert. denied*, 513 U.S. 1112 (1995).

The Supreme Court has carefully defined the requirements for reversal for plain error:

> There must be an error that is plain and that affects substantial rights. Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

**United States v. Olano**, 507 U.S. 725, 732 (1993) (brackets and

internal quotations omitted); *see also* **Johnson v. United States**, 117 S. Ct. 1544, 1548-49 (1997).[3]

IN REVIEWING THE RESULTS OF A BENCH TRIAL, A DISTRICT COURT'S FINDINGS OF FACT "SHALL NOT BE SET ASIDE UNLESS CLEARLY ERRONEOUS." FED. R. CIV. P. 52(a). For our present purposes, however, it is important to note that "when the court's error goes to the heart of the legal conclusion, the finding, though similar to one of fact, should not be protected." 1 STEVEN ALAN CHILDRESS & MARTHA S. DAVIS, FEDERAL STANDARDS OF REVIEW § 2.18, at 2-125 (2d ed. 1992); *see, e.g.,* **Viator v. Delchamps Inc.**, 109 F.3d 1124, 1126-27 (5th Cir.), *cert. denied*, 118 S. Ct. 165 (1997).

---

[3]     There has been some confusion in our cases about the continued viability of the "miscarriage of justice" requirement for appellate review of unpreserved error in civil cases. Some of our cases suggest that the "miscarriage of justice" analysis sails in tandem with an **OLANO**-STYLE STANDARD OF REVIEW. *SEE* **HIGHLANDS INS. CO.**, 27 F.3D AT 1032 (NOTING THAT APPELLATE REVIEW OF PLAIN ERROR IN CIVIL CASES "IS NOT A RUN-OF-THE-MILL REMEDY AND WILL OCCUR ONLY IN EXCEPTIONAL CIRCUMSTANCES TO AVOID A MISCARRIAGE OF JUSTICE." (INTERNAL QUOTATIONS OMITTED)). IN CERTAIN CONTEXTS, HOWEVER, OUR EN BANC COURT HAS DISCLAIMED A SEPARATE "MISCARRIAGE OF JUSTICE" REQUIREMENT FOR PLAIN-ERROR REVIEW. *SEE* **DOUGLASS**, 79 F.3D AT 1423-28 (CIVIL APPEALS IN WHICH A PARTY FAILED TO OBJECT TO ALLEGED ERRORS IN A MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS); **CALVERLEY**, 37 F.3D AT 163-64 (CRIMINAL APPEALS).

THESE ARE ROUGH SEAS TO NAVIGATE, ESPECIALLY IN LIGHT OF THE FACT THAT THE APPLICABILITY OF THE "MISCARRIAGE OF JUSTICE" REQUIREMENT IN UNCHARTED PLAIN-ERROR TERRITORY WAS EXPRESSLY LEFT OPEN IN A RECENT OPINION OF OUR EN BANC COURT. *SEE* **DOUGLASS**, 79 F.3D AT 1428 N.15. RATHER THAN CHART A NEW COURSE, WE WILL SIMPLY SAIL WITH THE FLEET IN APPLYING THE **OLANO** STANDARD OF PLAIN-ERROR REVIEW, CONFIDENT THAT WHATEVER INDEPENDENT STANDARD MIGHT BE REPRESENTED BY "MISCARRIAGE OF JUSTICE" RUBRIC, IT IS ADEQUATELY SATISFIED IN THIS CASE WHICH EASILY SURVIVES THE RIGORS OF **OLANO**'S FOUR-PART ANALYSIS. *CF.* **DOUGLASS**, 79 F.3D AT 1425 ("[M]OST CASES, PRE- AND POST-**OLANO**, IN OUR CIRCUIT AND OTHERS USE THE TERM 'MANIFEST INJUSTICE' TO DESCRIBE THE RESULT OF A PLAIN ERROR.").

III.

To resolve this appeal, we must determine (1) if there was error, (2) if that error was plain, (3) if the error affects substantial rights, and (4) whether allowing that error to stand seriously affects the fairness, integrity, or public reputation of judicial proceedings.

A.

We turn first to the question of whether there was **Gautreaux** error. As a threshold matter, we pause to note that there can be no question but that Falcon Drilling is entitled to the benefit of the **Gautreaux** rule, despite the fact that it was announced after the conclusion of the trial in this case. The Supreme Court held in **Harper v. Virginia Dep't of Taxation**, 509 U.S. 86 (1993), that

> When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule.

**Harper**, 509 U.S. at 97. In the past, our Circuit has adopted as its own the Supreme Court's rules on the retroactivity of legal principles announced in civil cases. *See, e.g.*, **Sterling v. Block**, 953 F.2d 198, 200 (5th Cir. 1992).[4] THUS, THE **GAUTREAUX** RULE APPLIES IN

---

[4]     This practice comports with that in other circuits. *SEE, E.G.*, **NATIONAL FUEL GAS SUPPLY CORP. V. FERC**, 59 F.3D 1281, 1285, 1288-89 (D.C. CIR. 1995); **LABORERS' INT'L UNION, AFL-CIO V. FOSTER WHEELER CORP.**, 26 F.3D 375, 386 N.8 (3D CIR.), *CERT. DENIED*, 513 U.S. 946 (1994); **ECKSTEIN V. BALCOR FILM INVESTORS**, 8 F.3D 1121, 1128 (7TH CIR. 1993), *CERT. DENIED*, 510 U.S. 1073 (1994); **NEWPORT NEWS SHIPBUILDING & DRY DOCK CO. V. GARRETT**, 6 F.3D 1547, 1554 (FED. CIR. 1993); **UNITED STATES V. GOODNER BROS.**

THE PRESENT CASE, WHICH APPEARS BEFORE OUR COURT ON DIRECT APPEAL.[5]

WE NOW CONSIDER WHETHER THE CONCLUSIONS OF LAW ENTERED AT TRIAL WERE ERRONEOUS IN LIGHT OF *GAUTREAUX*. "ERROR IS DEFINED AS A DEVIATION FROM A LEGAL RULE IN THE ABSENCE OF A VALID LEGAL WAIVER." *CALVERLEY*, 37 F.3D AT 162 (CITING *OLANO*, 507 U.S. AT 732). THE DISTRICT COURT RULED:

> 3. UNDER THE JONES ACT A DEFENDANT MUST BEAR RESPONSIBILITY FOR ANY NEGLIGENCE, HOWEVER SLIGHT, THAT PLAYED A PART IN PRODUCING THE PLAINTIFF'S INJURIES. *IN RE COOPER/T. SMITH*, 929 F.2D 1073, 1077 (5TH CIR. 1991) [, *CERT. DENIED*, 502 U.S. 865 (1991)].
>
> 4. DEFENDANT WAS NEGLIGENT IN FAILING TO ENSURE THAT THE LOWER END OF THE PIPE STRING WAS POSITIONED PROPERLY BEFORE SETTING IT DOWN.
>
> * * *
>
> 7. A SEAMAN HAS A DUTY, ALBEIT SLIGHT, TO USE REASONABLE CARE TO PROTECT HIMSELF. *SAVOIE V. OTTO CANDIES, INC.*, 692 F.2D 363, 371 (5TH CIR. 1982).
>
> 8. PLAINTIFF WAS NOT CONTRIBUTORILY NEGLIGENT IN CAUSING THE ACCIDENT WHICH RESULTED IN HIS INJURY.

IN *GAUTREAUX*, WE HELD THAT "NOTHING IN THE TEXT OR STRUCTURE OF THE FELA-JONES ACT LEGISLATION SUGGESTS THAT THE STANDARD OF CARE TO BE ATTRIBUTED TO EITHER AN EMPLOYER OR AN EMPLOYEE IS ANYTHING DIFFERENT THAN ORDINARY PRUDENCE UNDER THE CIRCUMSTANCES." *GAUTREAUX*, 107 F.3D AT 338. WITH RESPECT TO THE APPLICABLE STANDARD FOR CONSIDERING THE CONTRIBUTORY NEGLIGENCE OF A JONES ACT SEAMAN, WE

---

*AIRCRAFT, INC.*, 966 F.2D 380, 385 (8TH CIR. 1992), *CERT. DENIED*, 506 U.S. 1049 (1993).

[5] The possible exceptions to the *HARPER* RULE DISCUSSED IN *RYDER V. UNITED STATES*, 515 U.S. 177 (1995), AND *REYNOLDSVILLE CASKET CO. V. HYDE*, 514 U.S. 749 (1995), ARE INAPPLICABLE. THE APPLICABILITY OF *GAUTREAUX* IS ESSENTIAL TO DETERMINING THE OUTCOME OF THIS CASE. *SEE HYDE*, 514 U.S. AT 758-59. MOREOVER, THE APPLICATION OF *GAUTREAUX* WOULD NOT CAUSE CRAWFORD "THE SORT OF GRAVE DISRUPTION OR INEQUITY INVOLVED IN AWARDING RETROSPECTIVE RELIEF" THAT WOULD CALL INTO THE ACTION THE DOCTRINE (OF QUESTIONABLE CONTINUED VIABILITY) OF *CHEVRON OIL CO. V. HUSON*, 404 U.S. 97 (1971). *SEE RYDER*, 515 U.S. AT 184-85.

SPECIFICALLY HELD THAT:

> A SEAMAN . . . IS OBLIGATED UNDER THE JONES ACT TO ACT WITH ORDINARY PRUDENCE UNDER THE CIRCUMSTANCES. THE CIRCUMSTANCES OF A SEAMAN'S EMPLOYMENT INCLUDE NOT ONLY HIS RELIANCE ON HIS EMPLOYER TO PROVIDE A SAFE WORK ENVIRONMENT BUT ALSO HIS OWN EXPERIENCE, TRAINING, OR EDUCATION. THE REASONABLE PERSON STANDARD, THEREFORE, AND A JONES ACT NEGLIGENCE ACTION BECOMES ONE OF THE REASONABLE SEAMAN IN LIKE CIRCUMSTANCES. TO HOLD OTHERWISE WOULD UNJUSTLY REWARD UNREASONABLE CONDUCT AND WOULD FAULT SEAMEN ONLY FOR THEIR GROSS NEGLIGENCE, WHICH WAS NOT THE CONTEMPLATION OF CONGRESS.

*ID.* AT 339.

THE DISTRICT COURT'S CONCLUSIONS OF LAW REGARDING STANDARDS OF JONES ACT NEGLIGENCE MAY HAVE BEEN DEFENSIBLE UNDER OUR PRE-*GAUTREAUX* CASE LAW. UNDER *GAUTREAUX*, HOWEVER, THE RULE IS CLEAR, AND THE DECISION OF THE DISTRICT COURT PRESENTS ERROR IN TWO RESPECTS. THE DISTRICT COURT CHARGED FALCON DRILLING WITH "RESPONSIBILITY FOR ANY NEGLIGENCE, HOWEVER SLIGHT," BUT *GAUTREAUX* SPECIFICALLY DISAVOWS "ATTRIBUTING TO JONES ACT EMPLOYERS A HIGHER DUTY OF CARE THAN THAT REQUIRED UNDER ORDINARY NEGLIGENCE." *ID.* FURTHERMORE, THE DISTRICT COURT RULED THAT "[A] SEAMAN HAS A DUTY, ALBEIT SLIGHT, TO USE REASONABLE CARE TO PROTECT HIMSELF," WHILE *GAUTREAUX* REJECTS THE RULE "ASCRIBING TO SEAMEN A SLIGHT DUTY OF CARE TO PROTECT THEMSELVES FROM THE NEGLIGENCE OF THEIR EMPLOYERS." *ID.* THE DISTRICT COURT'S CONCLUSIONS OF LAW DEVIATE FROM THE LEGAL RULE ANNOUNCED IN *GAUTREAUX*, AND THE "ERROR" PRONG OF THE *OLANO* INQUIRY IS THUS SATISFIED IN THIS CASE.


B.

WE NEXT CONSIDER WHETHER THE ERROR COMMITTED AT TRIAL IS PLAIN. THE SUPREME COURT HAS PROVIDED CONSIDERABLE GUIDANCE ON THIS POINT. "'PLAIN' IS SYNONYMOUS WITH 'CLEAR' OR, EQUIVALENTLY, 'OBVIOUS.'" *OLANO*, 507 U.S. AT 734. "[W]HERE THE LAW AT THE TIME OF TRIAL WAS SETTLED AND CLEARLY CONTRARY TO THE LAW AT THE TIME

OF APPEAL -- IT IS ENOUGH THAT AN ERROR BE 'PLAIN' AT THE TIME OF APPELLATE CONSIDERATION." *JOHNSON*, 117 S. CT. AT 1549.

JUST AS IN THE SUPREME COURT'S RECENTLY DECIDED *JOHNSON* CASE, THE LAW IN THE PRESENT CASE HAS CHANGED BETWEEN THE TRIAL AND OUR DETERMINATION ON APPEAL. *JOHNSON* DICTATES THAT WE USE HINDSIGHT TO DECIDE WHETHER THE ERROR WAS PLAIN.[6] IN LIGHT OF *GAUTREAUX*, THE ERROR IS PLAIN, CLEAR, AND OBVIOUS. THUS THE SECOND *OLANO* FACTOR IS SATISFIED.

## C.

WE NOW INQUIRE WHETHER THE TRIAL COURT'S ERROR AFFECTED FALCON DRILLING'S SUBSTANTIAL RIGHTS. "*OLANO* COUNSELS THAT IN MOST CASES THE AFFECTING OF SUBSTANTIAL RIGHTS REQUIRES THAT THE ERROR BE PREJUDICIAL; IT MUST AFFECT THE OUTCOME OF THE PROCEEDING." *CALVERLEY*, 37 F.3D AT 164 (CITING *OLANO*, 507 U.S. AT 734-35). IN THIS CASE, THE PREJUDICE TO FALCON DRILLING CAN BE EASILY DEMONSTRATED.

THE DISTRICT COURT USED ERRONEOUS STANDARDS FOR DETERMINING THE NEGLIGENCE OF THE PARTIES. THE STANDARD APPLIED TO FALCON DRILLING WAS TOO HIGH. IT MADE FALCON LIABLE FOR "ANY NEGLIGENCE, HOWEVER SLIGHT, THAT PLAYED A PART IN PRODUCING THE PLAINTIFF'S INJURIES." ALSO, THE STANDARD APPLIED TO CRAWFORD WAS TOO LOW. IT STATED THAT CRAWFORD HAD A "DUTY, ALBEIT SLIGHT, TO USE REASONABLE CARE TO PROTECT HIMSELF."

---

[6] Prior to the Supreme Court's decision in *JOHNSON*, OUR EN BANC OPINION IN *CALVERLEY* SUGGESTED THAT PLAIN ERRORS ARE "ERRORS WHICH ARE SO CONSPICUOUS THAT THE TRIAL JUDGE AND PROSECUTOR WERE DERELICT IN COUNTENANCING THEM, EVEN ABSENT THE DEFENDANT'S TIMELY ASSISTANCE IN DETECTING THEM." *CALVERLEY*, 37 F.3D AT 163 (BRACKETS AND INTERNAL QUOTATIONS OMITTED). IN LIGHT OF *JOHNSON*'S HOLDING THAT PLAINNESS IS JUDGED WITH APPELLATE HINDSIGHT TO CORRECT AN ERROR WHICH ONLY BECAME AN ERROR IN LIGHT OF INTERVENING LAW WHICH WAS UNAVAILABLE AT THE TIME OF TRIAL, THIS ASPECT OF *CALVERLEY*'S DISCUSSION OF PLAINNESS HAS BEEN ABROGATED.

As *Gautreaux* makes clear, these standards seriously misstate the law. The standards applied by the district court embody a strong presumption that a Jones Act employer is responsible for the injuries of seamen. Furthermore, they attribute very little responsibility to the seaman himself. In contrast, *Gautreaux* requires that both the employer and the seaman be subjected to the "ordinary prudence" standard of negligence under the Jones Act. *See Gautreaux*, 107 F.3d at 338-39.

Had the proper standards been applied, the district court may very well have found Crawford to have been contributorily negligent to some degree. There is ample evidence in the record to support the district court's conclusion that the driller and the drill hands improperly positioned the drill pipe on the pipe rack floor, thereby giving rise to Falcon Drilling's liability. But there is also evidence to suggest that Crawford was himself negligent.

The district court's findings of fact include a finding that "it was not unreasonable for Greg Crawford to expect that the drill pipe he was attempting to handle would fall to the left as the previous stands of pipe had rather than to the right as it did." This conclusion is supported by the evidence in the record that drill crews who were experienced at working together, as this crew was, develop a "rhythm" which might lull Crawford into assuming that each stand of pipe would fall in the same direction as the previous stands had fallen. Under the standard of "slight" negligence applied by the district court, this finding alone might support a conclusion that Crawford was not contributorily negligent. But had a standard of ordinary prudence standard been applied, other evidence in the record might have led the district court to a different conclusion. Specifically, Crawford himself, witnesses from the drill crew, and both expert witnesses who testified about the operations on drilling rigs all testified that a derrickman must always be prepared

-11-

FOR THE STAND OF PIPE TO FALL IN EITHER DIRECTION. THUS, EVEN THOUGH IT MIGHT NOT HAVE BEEN "UNREASONABLE" FOR CRAWFORD TO EXPECT THE STAND TO FALL TO THE LEFT, THE ORDINARY PRUDENT SEAMAN MIGHT HAVE TAKEN SOME ADDITIONAL PRECAUTIONS TO PREVENT INJURY TO HIMSELF.

THERE IS ALSO EVIDENCE THAT CRAWFORD MIGHT HAVE BEEN ABLE TO ANTICIPATE THAT THE STAND WOULD FALL TO THE RIGHT. ON CROSS-EXAMINATION, CRAWFORD ADMITTED THAT HE COULD HAVE SEEN THE APPROXIMATE LOCATION OF THE PLACEMENT OF THE BOTTOM OF THE STAND IF HE HAD LOOKED. THIS TESTIMONY WAS CORROBORATED BY SEVERAL OTHER WITNESSES AT TRIAL.[7] FURTHERMORE, A MEMBER OF THE DRILL CREW AND FALCON DRILLING'S EXPERT WITNESS BOTH TESTIFIED THAT CRAWFORD SHOULD HAVE GOTTEN AN INDICATION OF WHICH WAY THE PIPE WAS LEANING BY OBSERVING THE ELEVATORS. IN LIGHT OF CRAWFORD'S CONCESSION THAT HE HAD TO BE READY FOR THE PIPE TO FALL IN EITHER DIRECTION, IF THE PROPER STANDARD WERE APPLIED, THE DISTRICT COURT MIGHT CONCLUDE THAT CRAWFORD SHOULD HAVE BEEN MORE AWARE OF THE THINGS HAPPENING AROUND HIM WHICH MIGHT HAVE HELPED HIM TO JUDGE WHICH WAY THE STAND OF PIPE WOULD FALL.

AS FURTHER EVIDENCE OF CRAWFORD'S POTENTIALLY CONTRIBUTORY NEGLIGENCE, IT IS NOTABLE THAT THE DISTRICT COURT ACKNOWLEDGED THAT A "MULE LINE" WAS AVAILABLE TO ASSIST CRAWFORD IN RACKING THE TOP OF THE STAND OF PIPE.[8] THE RECORD SUGGESTS THAT CRAWFORD KNEW BEFORE IT CAME OUT OF THE HOLE THAT THE STAND WHICH INJURED HIM WAS A PARTICULARLY HEAVY STAND. THE DISTRICT COURT SPECIFICALLY DETERMINED THAT "[T]HE

---

[7] The possibility that Crawford could have looked down and seen how the stand of pipe was positioned is further corroborated by the testimony of several witnesses from the drill crew that the driller always stopped the process momentarily after the bottom of the stand was racked, and also that Crawford had the ability to stop the process by refusing to unlatch the elevators, which also would have enabled him to look below him.

[8] The "mule line" is a device used by the drill crew to ease the task of setting pipe back in the derrick.

DERRICKMAN CAN STOP THE OPERATION AND REQUEST A MULE LINE IF HE DOES NOT THINK HE COULD HANDLE A PARTICULAR STAND THAT IS TO BE REMOVED FROM THE HOLE." CRAWFORD'S OWN EXPERT WITNESS CHARACTERIZED THE ATTEMPT TO MANUALLY HANDLE THE SEVEN-TO-EIGHT-THOUSAND-POUND STAND OF PIPE AS AN UNSAFE PRACTICE. SO AGAIN, HAD THE COURT NOT CHARACTERIZED CRAWFORD'S DUTY TO PROTECT HIMSELF AS A "SLIGHT" ONE, THE COURT MIGHT HAVE DETERMINED CRAWFORD'S FAILURE TO REQUEST A MULE LINE TO BE CONTRIBUTORY NEGLIGENCE WHICH WOULD HAVE REDUCED FALCON DRILLING'S LIABILITY FOR THE ACCIDENT.

FINALLY, THERE IS EVIDENCE IN THE RECORD THAT CRAWFORD'S OWN ACTIONS UNNECESSARILY ENDANGERED HIMSELF. IN PARTICULAR, THERE WAS TESTIMONY AT TRIAL THAT IN LIGHT OF A DERRICKMAN'S DUTY TO BE PREPARED FOR THE STAND TO FALL IN EITHER DIRECTION, IT WAS UNSAFE FOR CRAWFORD TO HAVE POSITIONED HIS BODY IN RELIANCE ON HIS ASSUMPTION THAT ALL OF THE STANDS WOULD FALL TO THE LEFT. ALSO, THERE WAS TESTIMONY THAT INSTEAD OF RISKING INJURY BY TRYING TO COMPENSATE FOR HIS MISJUDGMENT ABOUT THE DIRECTION IN WHICH THE PIPE WOULD FALL, CRAWFORD SHOULD HAVE SIMPLY LET THE STAND FALL AGAINST THE DERRICK. WE, OF COURSE, CANNOT KNOW HOW THIS EVIDENCE MIGHT HAVE AFFECTED THE DISTRICT COURT'S RESOLUTION OF THE CASE HAD THE PROPER JONES ACT STANDARDS BEEN APPLIED.

THE DISTRICT COURT INCLUDED IN HIS FINDINGS OF FACT HIS ASSESSMENT THAT:

> GREG CRAWFORD DID NOT CONTRIBUTE TO HIS OWN INJURY IN ATTEMPTING TO CATCH THE DRILL PIPE WHEN IT WENT TO THE RIGHT RATHER THAN RELEASING THE PIPE AND LETTING IT FALL AGAINST THE DERRICK, IN FAILING TO SEE THAT THE DRILL PIPE HAD BEEN IMPROPERLY RACKED ON THE DRILL PIPE FLOOR BY THE FLOORHANDS BEFORE THE DRILLER SET THE DRILL PIPE, OR IN FAILING TO STOP THE TRIPPING OPERATION TO ASK FOR THE USE OF A MULE LINE ON THE STAND OF PIPE THAT THE CREW WAS HANDLING WHEN HE WAS INJURED.

HOWEVER, FROM THE STATE OF THE RECORD, IT IS NOT CLEAR THAT THE DISTRICT COURT WAS MAKING A SPECIFIC FACTUAL FINDING THAT CRAWFORD'S SUCCESSFUL ATTEMPT TO RACK THE PIPE, HIS FAILURE TO OBSERVE THE FAULTY PLACEMENT OF THE BOTTOM OF THE STAND IN THE PIPE RACK, AND HIS FAILURE TO REQUEST A MULE LINE TO ASSIST THE MOVEMENT OF A

PARTICULARLY HEAVY STAND OF PIPE DID NOT "CONTRIBUTE" TO HIS INJURY. QUITE TO THE CONTRARY, IT IS MUCH MORE LIKELY THAT THE ABOVE-QUOTED PASSAGE FROM THE DISTRICT COURT'S OPINION REFLECTS THE COURT'S ASSESSMENT THAT DESPITE THE PRESENCE OF THE ABOVE-LISTED FACTORS (WHICH APPEAR TO HAVE BEEN, AT THE VERY LEAST, CAUSES-IN-FACT OF THE ACCIDENT), THESE FACTS DID NOT OR WOULD NOT AMOUNT TO A BREACH OF CRAWFORD'S "SLIGHT" DUTY TO PROTECT HIMSELF. ACCORDINGLY, THIS ASSESSMENT IS NOT A MERE "FINDING OF FACT," BUT RATHER AN APPLICATION OF LAW TO THE FACTS FOUND BY THE DISTRICT COURT. IT IS THEREFORE NOT SUBJECT TO THE CLEAR-ERROR ANALYSIS OF RULE 52(A), BUT IS, RATHER, SUBJECT TO OUR RULES FOR REVIEWING ERRORS OF LAW.

THE DISTRICT COURT'S FINDINGS OF FACT ACKNOWLEDGE THAT "[T]HE WORK OF THE DRILLER, THE FLOORHANDS AND THE DERRICKMAN ARE INTERRELATED." THE FINDINGS ALSO NOTE THAT "THE DERRICKMAN CAN STOP THE OPERATION BY REFUSING TO UNLATCH THE ELEVATORS." THESE FINDINGS SUGGEST THAT THE DISTRICT COURT BELIEVED THAT CRAWFORD WAS JUST AS INVOLVED IN (AND RESPONSIBLE FOR) THE PROCESS OF TRIPPING THE PIPE AS WERE THE WORKERS ON THE DRILL FLOOR. IN LIGHT OF THE SUBSTANTIAL POSSIBILITY THAT THE APPLICATION OF ERRONEOUS JONES ACT NEGLIGENCE STANDARDS AFFECTED THE DISTRICT COURT'S DETERMINATION OF THE ISSUE OF CRAWFORD'S POSSIBLE CONTRIBUTORY NEGLIGENCE, WE FIND THAT FALCON DRILLING'S DEFENSE WAS MATERIALLY PREJUDICED. WHETHER OR NOT A RECONSIDERATION UNDER THE PROPER STANDARDS WILL ULTIMATELY RESULT IN A FINDING OF CONTRIBUTORY NEGLIGENCE, THE PRESENCE OF EVIDENCE IN THE RECORD SUGGESTING THAT CRAWFORD'S OWN NEGLECT COULD HAVE CONTRIBUTED TO HIS ACCIDENT PERSUADES US THAT FALCON DRILLING'S SUBSTANTIAL RIGHTS HAVE BEEN AFFECTED FOR THE PURPOSES OF PLAIN-ERROR ANALYSIS.

## D.

FINALLY, WE TURN TO THE QUESTION OF WHETHER THE ERROR IN THIS CASE SERIOUSLY

-14-

AFFECTS THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS. *SEE OLANO*, 507 U.S. AT 732. THIS PART OF THE *OLANO* TEST ESSENTIALLY ENTRUSTS US TO EXERCISE OUR JUDICIAL DISCRETION TO DETERMINE WHETHER OR NOT THIS IS THE KIND OF EXCEPTIONAL CASE THAT MERITS REVERSAL ON THE BASIS OF PLAIN ERROR. *SEE ID.* AT 735-37; *JOHNSON*, 117 S. CT. AT 1550; *CALVERLEY*, 37 F.3D AT 164. AN ARRAY OF FACTORS CONVINCE US THAT THIS STANDARD IS MET IN THE PRESENT CASE.

FIRST, THE SIMILARITY BETWEEN THE PROCEDURAL SETTING OF THIS CASE AND THAT OF *HORMEL V. HELVERING*, 312 U.S. 552 (1941), IS COMPELLING. IN *HORMEL*, THE COMMISSIONER OF INTERNAL REVENUE ASSESSED A DEFICIENCY AGAINST MR. HORMEL FOR FAILURE TO REPORT ON HIS INDIVIDUAL INCOME TAX RETURNS THE INCOME FROM SEVERAL TRUSTS WHICH THE COMMISSIONER DEEMED TO BE REVOCABLE (THE INCOME FROM SUCH TRUSTS THEREFORE BEING ATTRIBUTABLE TO THE DEFENDANT). THE COMMISSIONER DEFENDED HIS POSITION BY RELYING ON SECTIONS 166 AND 167 OF THE INTERNAL REVENUE CODE. THE BOARD OF TAX APPEALS RULED IN FAVOR OF MR. HORMEL ON THE QUESTION OF WHETHER HE WAS LIABLE FOR TAXES ON THE TRUST INCOME. ON APPEAL TO THE EIGHTH CIRCUIT, THE COMMISSIONER ABANDONED HIS RELIANCE ON SECTION 166, AND RELIED ON SECTIONS 22(A) AND 167 TO SUPPORT THE FINDING OF DEFICIENCY. THE DEFENDANT OBJECTED TO THE COMMISSIONER'S USE OF A NEW ARGUMENT, THAT BASED ON SECTION 22(A), ON APPEAL. STILL, THE EIGHTH CIRCUIT REVERSED THE JUDGMENT OF THE BOARD OF TAX APPEALS, HOLDING THAT SECTION 22(A) GOVERNED THE MATTER AND DICTATED THE RESULT ADVOCATED BY THE COMMISSIONER. *SEE HORMEL*, 312 U.S. AT 553-55.

THE SUPREME COURT GRANTED CERTIORARI, AND DIRECTLY CONFRONTED THE PROPRIETY OF THE EIGHTH CIRCUIT'S CONSIDERATION OF A NEW LEGAL ARGUMENT ON APPEAL. THE COURT NOTED THAT "[O]RDINARILY AN APPELLATE COURT DOES NOT GIVE CONSIDERATION TO ISSUES NOT RAISED BELOW," BUT ALSO THAT "[T]HERE MAY ALWAYS BE EXCEPTIONAL CASES OR PARTICULAR CIRCUMSTANCES WHICH WILL PROMPT A REVIEWING OR APPELLATE COURT, WHERE

-15-

INJUSTICE MIGHT OTHERWISE RESULT, TO CONSIDER QUESTIONS OF LAW WHICH WERE NEITHER PRESSED NOR PASSED UPON BY THE COURT OR ADMINISTRATIVE AGENCY BELOW." *ID.* AT 556, 557. THE COURT THEN DISCUSSED THE PECULIAR SETTING OF THE CASE BEFORE IT:

> [W]E ARE OF OPINION THAT THE COURT BELOW SHOULD HAVE GIVEN AND PROPERLY DID GIVE CONSIDERATION TO SECTION 22(A) IN DETERMINING PETITIONER'S TAX LIABILITY. THE COMMISSIONER URGED THIS POINT BEFORE THE CIRCUIT COURT OF APPEALS AND HAS STRONGLY PRESENTED IT HERE. AT THE TIME THE BOARD OF TAX APPEALS MADE ITS DECISION IN THIS CASE, WE HAD NOT YET HANDED DOWN OUR OPINION IN *HELVERING v. CLIFFORD*, 309 U.S. 331 [(1940)], IN WHICH WE HELD THAT UNDER SECTION 22(A) THE INCOME OF CERTAIN TRUSTS WAS TAXABLE TO RESPONDENT. . . . AS THE RECORD NOW STANDS WE THINK THE COURT BELOW CORRECTLY CONCLUDED THAT THE TRUST INCOME WAS TAXABLE TO PETITIONER UNDER THE PRINCIPLES ANNOUNCED IN THE *CLIFFORD* CASE. THEREFORE TO APPLY HERE THE GENERAL PRINCIPLE OF APPELLATE PRACTICE FOR WHICH PETITIONER CONTENDS WOULD RESULT IN PERMITTING HIM WHOLLY TO ESCAPE PAYMENT OF A TAX WHICH UNDER THE RECORD BEFORE US HE CLEARLY OWES. THUS VIEWED, THIS IS EXACTLY THE TYPE OF CASE WHERE APPLICATION OF THE GENERAL PRACTICE WOULD DEFEAT RATHER THAN PROMOTE THE ENDS OF JUSTICE, AND THE COURT BELOW WAS RIGHT IN SO HOLDING.

*ID*. AT 559-60. THE SUPREME COURT THUS AFFIRMED THE EIGHTH CIRCUIT AND DIRECTED THAT THE CASE BE REMANDED TO THE BOARD OF TAX APPEALS FOR FURTHER FACT FINDING AND PROCEEDINGS IN LIGHT OF THE INTERVENING *CLIFFORD* OPINION. *SEE ID.* AT 560. IT IS HARD TO IMAGINE A CASE CLOSER TO THE POINT THAN THIS. THE COURT'S HOLDING IN *HORMEL* STRONGLY SUPPORTS –– IF NOT COMPELS –– OUR DETERMINATION THAT A TRIAL ERROR THAT BECOMES PLAIN ON DIRECT APPEAL IN LIGHT OF AN INTERVENING JUDICIAL ANNOUNCEMENT OF A CONTROLLING RULE IMPLICATES THE SORT OF SERIOUS EFFECT ON THE "FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS" ENVISIONED BY *OLANO*.

EVEN IF THE RESULT IN *HORMEL* WERE NOT SUFFICIENTLY SUGGESTIVE, WE WOULD BE PERSUADED TO EXERCISE OUR DISCRETION BY THE PRESENCE OF OTHER FACTORS. FOR EXAMPLE, THE VERY FACT THAT WE GRANTED EN BANC REVIEW IN *GAUTREAUX* SUGGESTS THAT THE CONFUSION AND CONFLICT THAT CHARACTERIZED OUR PRIOR PRECEDENTS IN THIS AREA OF LAW COMPROMISED THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS. WE REMEDIED THAT PROBLEM BY ANNOUNCING A NEW RULE AND GRANTING RELIEF

TO THE *GAUTREAUX* DEFENDANT. THE REASONS THAT PROMPTED OUR COURT TO PAUSE AND TAKE STOCK OF OUR JONES ACT JURISPRUDENCE ALSO SUPPORT GRANTING RELIEF IN THIS CASE. THE CASE BEFORE US IS A DIRECT APPEAL; CRAWFORD SHOULD NOT GET THE ADVANTAGE OF PRE-*GAUTREAUX* RULES MERELY BECAUSE OF THE FORTUITY OF THE TIMING OF THE RELEVANT DECISIONS.

FURTHERMORE, OUR DISCRETION IS INFORMED BY THE FACT THAT THIS CASE WAS TRIED TO THE COURT. A CHIEF JUSTIFICATION FOR OUR GENERAL RULE AGAINST PERMITTING NEW ISSUES TO BE RAISED ON APPEAL IS THE CONCERN "OF THE PUBLIC INTEREST" FOR PROTECTING THE FINALITY OF JUDGMENTS. *UNITED STATES V. ATKINSON*, 297 U.S. 157, 159 (1936); *SEE ALSO CALVERLEY*, 37 F.3D AT 162. THE PARTIES' INTEREST IN FINALITY IS SELF-EVIDENT; THE "PUBLIC CONCERN" FOR FINALITY IS BASED ON THE NEED TO CONSERVE LIMITED JUDICIAL RESOURCES. IN THIS CASE, ACKNOWLEDGING THE PRESENCE OF PLAIN ERROR AND REMANDING THE CASE FOR FURTHER PROCEEDINGS WILL NOT UNNECESSARILY BURDEN OUR FEDERAL COURTS' TREMENDOUS CASELOAD. A SITUATION WHICH WOULD REQUIRE REPEATING A LENGTHY JURY TRIAL MIGHT PRESENT A DIFFERENT CASE. HERE, HOWEVER, THE DISTRICT COURT ABLY CONDUCTED THE BENCH TRIAL BELOW AND IS ALREADY INTIMATELY FAMILIAR WITH THE FACTS OF THIS CASE. ALL THAT IS REQUIRED ON REMAND IS A RECONSIDERATION OF THE DISTRICT COURT'S PRIOR CONCLUSIONS IN LIGHT OF *GAUTREAUX*. WE CONFIDENTLY LEAVE THE QUESTION OF WHETHER THIS PROCESS WILL REQUIRE FURTHER SUBMISSIONS OR ARGUMENTS FROM THE PARTIES TO THE SOUND DISCRETION OF THE DISTRICT COURT.

IN SUM, THEN, THE SUPREME COURT'S DECISION IN *HORMEL*, OUR RECOGNITION OF THE FUNDAMENTAL NATURE OF THE CHANGE IN OUR CIRCUIT'S INTERPRETATION OF JONES ACT NEGLIGENCE STANDARDS EFFECTED BY *GAUTREAUX*, AND THE FACT THAT WE ARE DEALING WITH THE AFTERMATH OF A BENCH TRIAL CONDUCTED ON THE EVE OF *GAUTREAUX*'S SEA CHANGE, ALL CONVINCE US THAT THE PRESENT APPEAL IS AN APPROPRIATE CASE FOR RECOGNIZING PLAIN

-17-

ERROR. WE THEREFORE CONCLUDE THAT THE ERROR'S SERIOUS EFFECT ON THE FAIRNESS, INTEGRITY, OR PUBLIC REPUTATION OF JUDICIAL PROCEEDINGS REQUIRES US TO VACATE THE DISTRICT COURT'S JUDGMENT AS TO THE RESPECTIVE LIABILITY OF THE PARTIES.

IV.

FALCON DRILLING ALSO APPEALS THE AMOUNT OF DAMAGES AWARDED TO CRAWFORD. WE REVIEW FOR CLEAR ERROR. *SEE* FED. R. CIV. P. 52(a); **Nichols v. Petroleum Helicopters, Inc.**, 17 F.3d 119, 121 (5th Cir. 1994). We have considered the arguments on appeal and the evidence presented to the district court. The award entered by the district court was based on a finding of Crawford's future earnings that fell within the range of earnings suggested by the evidence at trial. We conclude that the district court's findings with respect to the amount of Crawford's damages were not clearly erroneous.

V.

In light of our Court's holding in **Gautreaux**, the district court's findings of fact and conclusions of law regarding the liability of the parties are plainly erroneous. We emphasize that we cast no aspersion on the district court's application of the law as it stood under our Circuit's governing precedents at the time this case was tried. But we will not close our eyes to the plain error committed below, even though that error is apparent only with the benefit of appellate hindsight.

We affirm the district court's valuation of Crawford's damages. Of course, any reallocation of liability that may result

-18-

from the proceedings on remand will require an appropriate allocation of responsibility among the parties for Crawford's damages, and we therefore vacate the damages award.

The judgment of the district court is AFFIRMED in part and VACATED in part, and the case is REMANDED for further proceedings consistent with the holdings of this Court in ***Gautreaux v. Scurlock Marine, Inc.***, 107 F.3d 331 (5th Cir. 1997) (en banc).