IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-30444
Summary Calendar
_____

CHARLES BARTHELEMY,

                                        Plaintiff-Appellant,

versus

PHILLIPS PETROLEUM COMPANY;
PRODUCTION SYSTEMS, INC;
KELLY LEE,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court for
the Eastern District of Louisiana

(D.C. No. 96-CV-2226-E)
_____
March 24, 2000

Before REAVLEY, SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

    Appealing from the judgment against him, Charles Barthelemy contends that

_____

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the district court committed clear error by finding appellees Phillips Petroleum Company, Production Systems Inc., and Kelly Lee 20 % comparatively negligent in the maritime accident that caused Barthelemy's back injury. In addition, Barthelemy contends that Phillips Petroleum's liability is not limited to the value of The M/S Mr. Bob. He also contends that the court committed clear error by not awarding Barthelemy more than $75,000 in general damages. We affirm.

We have jurisdiction over this case under 28 U.S.C. § 1291. We review the district court's findings of fact for clear error and its conclusions of law de novo.[1]

## 1.    Facts.

On June 30, 1995, the St. Michael–an oyster lugger owned by the Ancars and operated by John Ancar–left the dock and proceeded toward a predetermined oyster fishery. Meanwhile, Scott Ancar and Barthelemy bought supplies at the dock and loaded them into the Swamp Rat–a flat-bottomed boat faster than the St. Michael. The Swap Rat caught up to the St. Michael in the Freeport Sulphur Canal and pulled up along its port side to transfer the supplies. The two boats idled the middle of the canal with their bows tied and Scott Ancar holding the two sterns together.

At the direction of the Ancars, Barthelemy stood on a raised platform at the bow of the Swamp Rat and handed the supplies over to the crew of the St. Michael. While Barthelemy stood on the platform holding a case of soft drinks, a jo-boat named the Mr. Bob--proceeding in the same direction as the St. Michael and the

---

[1]Crawford v. Falcon Drilling Co., 131 F.3d 1120, 1124 (5th Cir. 1997).

Swamprat-- passed 75 feet off the port side of the two vessels. The Mr. Bob created a wake that tossed Barthelemy to the bottom of the Swamp Rat–thereby injuring his back and hip.

Phillips Petroleum owned the Mr. Bob at the time of the accident. The district court found that Phillips Petroleum and Petroleum Systems co-employed Lee to pilot the vessel.

After a trial to the bench in admiralty, the district court allocated fault for Barthelemy's injury as follows:

- Barthelemy–10%
- Lee, Phillips Petroleum, and Production Systems–20%
- the Ancars–70%.

The court found that Phillips Petroleum and Production Systems were vicariously liable for Lee's negligence. But the court also found that Phillips Petroleum, as a shipowner without knowledge or privity of Lee's negligence, was only liable up to the value of the Mr. Bob. Barthelemy settled his claim against the Ancars prior to trial.

## 2.    Apportionment of negligence.

The record supports the district court's apportionment of negligence. The Ancars decided to transfer supplies from the Swamp Rat to the St. Michael in the middle of the canal when they could have done so at the dock or closer to the side of the canal. Barthelemy, at the direction of the Ancars, stood on a raised platform attached to the Swamp Rat's bow and handed the supplies over to the St. Michael.

3

The Ancars did not tie the vessels' sterns together before attempting the transfer. In addition, the Ancars failed to post a lookout for approaching vessels. Given this evidence, the district court was not clearly erroneous in finding the Ancars 70% at fault and the defendants only 20% at fault.

Barthelemy contends that the district court committed clear error in finding that the Ancars violated the narrow channel rule by failing to proceed as close to the starboard side of the channel as was safe and practicable.[2] The record demonstrates that the transfer of supplies between the Swamp Rat and the St. Michael took place in the middle of the channel and that it was possible for both vessels to attempt this operation closer to the starboard side of the channel. The district court therefore did not commit clear error in finding that the Ancars violated the narrow channel rule.

But the record also established that the Mr. Bob proceeded in the same direction as the Ancars' vessels and passed them off their port side. Thus, it appears that the defendants also violated the narrow channel rule by failing to proceed as far to the starboard side of the channel as practicable. Although referenced in one sentence in his brief, Barthelemy does not develop this point. We therefore do not consider the effect of the Mr. Bob's apparent violation.

Barthelemy also contends that the Mr. Bob violated the narrow channel rule by failing to sound its horn before overtaking the Ancars' vessels. Although Inland Rule of Navigation 9 does not provide a definition of "overtaking vessel," we apply the definition of "overtaking vessel"provided by Rule 13:

---

[2]33 U.S.C. § 2009.

4

> A vessel shall be deemed to be overtaking when coming up with another vessel from a direction more than 22.5 degrees abaft her beam; that is, in such a position with reference to the vessel she is overtaking, that at night she would be able to see only the sternlight of that vessel but neither of her sidelights.[3]

Barthelemy presented no evidence that the Mr. Bob approached the St. Michael and the Swamp Rat from behind. The district court's finding that the Mr. Bob did not "overtake" the Ancars' vessels therefore was not clearly erroneous.

### 3. Limitation of liability.

Barthelemy argues that the district court erred in limiting Phillips Petroleum's liability to the value of the Mr. Bob. The Shipowners Limitation of Liability Act limits a shipowner's liability for acts of negligence or unseaworthiness to the value of its ship if the shipowner demonstrates that it lacked knowledge or privity of such negligence or unseaworthiness.[4] The statute uses "privity" to mean "some fault or neglect in which the shipowner personally participates."[5] "Knowledge" means either actual knowledge or knowledge that the shipowner should posses.[6]

In the instant case, the district court found that Phillips Petroleum did not have knowledge or privity of Lee's negligence. The record indicates that Phillips Petroleum offered Lee training sessions and safety seminars, gave Coast Guard

---

[3]33 U.S.C. § 2013(b).

[4]46 U.S.C 183(a); Farrell Lines, Inc. v. Jones, 530 F.2d 7, 10 (5th Cir. 1976).

[5]Hernandez v. M/V Rajan, 841 F.2d 582 (5th Cir. 1988), corrected on other grounds, 848 F.2d 498, 591 (5th Cir. 1988).

[6]Id.

safety pamphlets to Lee, and provided Lee with a week of hands-on training in the operation of jo-boats. As noted by the district court, there is no evidence indicating that Lee had prior accidents or complaints regarding his operation of jo-boats or that Phillips Petroleum had any reason to know that Lee would negligently operate the Mr. Bob. Thus, the district court's finding was not clearly erroneous.

**4.**      **The general damage award**.

Barthelemy finally contends that the district court's $75,000 general damages award was clearly erroneous. Barthelemy testified that he suffered significant pain and his expert testified that he was 30% to 40% disabled. The record also indicates, however, that he had previously injured his back and engaged in heavy manual labor his entire life. Based on this evidence, we cannot say that they district court clearly erred in awarding $75,000 in general damages.

**AFFIRMED.**