IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-60123
_____

ALVIN K. HUGHES,

Plaintiff-Appellant,

v.

GRAND CASINOS INC.; JIM PETERSON;

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
(1:97-CV-500-GR)
_____

October 22, 1999

Before KING, Chief Judge, JOLLY and WIENER, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Alvin K. Hughes appeals from the
district court's grant of summary judgment in favor of
Defendants-Appellees Grand Casino, Inc. and Jim Peterson.  We
AFFIRM.

I. BACKGROUND

In the Spring of 1997 Defendant-Appellee Grand Casinos, Inc.
(the "Casino") restructured its Table Games Department.
Defendant-Appellee Jim Peterson ("Peterson") was the vice-

_____

[*] Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

president of the department during the restructuring.  The restructuring resulted in the demotion of forty-four employees and the termination of twelve others.  Plaintiff-Appellant Alvin K. Hughes ("Hughes") was one of two black male employees terminated in the restructuring.  Additionally, six white males, two Hispanic males, and two white females were terminated.[1]

Hughes's effective termination date was April 7, 1997.  On or about the same day, the Casino presented Hughes with a written separation agreement (the "Agreement").  The Agreement released the Casino from any and all claims arising out of Hughes's employment and his subsequent termination.[2]  In exchange for such

---

[1]  There appears to be some confusion regarding the number of terminated white male employees.  Hughes's brief and the affidavit of Defendant-Appellee Peterson both state that twelve employees, including Hughes, were terminated: six white males, two Hispanic males, two black males, and two white females.  In Hughes's Response to Defendants' Motion for Summary Judgment, however, Hughes attached an internal memorandum from the Casino's Human Resources Department discussing the restructuring.  That memo indicated that thirteen employees were terminated: seven white males, two Hispanic males, two black males, and two white females.  In any event, the precise number and race of the terminated employees does not affect our holding.

[2]  Specifically, the Agreement stated that Hughes

> hereby releases and discharges Grand [the Casino] and its affiliates, and all of their directors, officers, and employees, agents, successors and assigns from any and all claims (except for claims under this Agreement) arising out of Hughes's employment by Grand and/or the termination of such employment, including but not limited to claims arising under the United States Constitution, Title VII of the Civil Rights Act of 1964, as amended, the Americans with Disabilities Act of 1990, 47 U.S.C., [sic] 225, 661; the Civil Rights Act of 1991; the

release Hughes was to receive five weeks of salary as severance pay. The Agreement gave Hughes fourteen days to consider the offer and advised him to consult with an attorney prior to acceptance. Hughes signed the Agreement sometime after he was presented with it and received a check from the Casino.

On September 12, 1997, Hughes filed this action in federal district court against the Casino and Peterson. Hughes's complaint alleged that his termination violated Title VII of the Civil Rights Act of 1964. The Casino and Peterson subsequently filed a motion for summary judgment, arguing that the Agreement Hughes signed prevented him from maintaining this action. The district court agreed, finding that Hughes had knowingly released the Casino by signing the Agreement and, if not, he ratified it by retaining his severance pay.

## II. DISCUSSION

We review a grant of summary judgment de novo. See Celotex

---

Equal Pay Act: [sic] the Rehabilitation in Employment Act of 1973; Section 1981 of the Civil Rights Act of 1966; the Age Discrimination in Employment Act, and any other federal, state and local [sic] statute or regulation regarding employment or termination of employment, as well as all common law claims, arising out of any act or failure to act.

Corp. v. Catrett, 477 U.S. 317, 323-24 (1986); Blakeney v. Lomas Information Systems, Inc., 65 F.3d 482, 484 (5th Cir. 1995). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmovant, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Amburgey v. Corhart Refractories Corp., Inc., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).

An employee may enter into a binding agreement to release an employer from all future claims so long as the employee enters into the release knowingly and voluntarily. See Williams v. Phillips Petroleum Co., 23 F.3d 930 (5th Cir. 1994); EEOC v. Cosmair, Inc., 821 F.2d 1085 (5th Cir. 1987). A release will be found to be valid unless the totality of the circumstances indicates that the employee did not enter into the release knowingly and voluntarily. See O'Hare v. Global Natural Resources, 898 F.2d 1015, 1017 (5th Cir. 1990). Hughes argues that he did not release the Casino because he did not knowingly and voluntarily enter into the Agreement. Hughes points to our decision in O'Hare for the proposition that a court should consider six factors when determining whether a release was entered into knowingly and voluntarily. These factors are:

> (1) the plaintiff's education and business experience, (2) the amount of time the plaintiff had possession of or access to the agreement before signing it, (3) the role of plaintiff in deciding the terms of the agreement, (4) the clarity of the agreement, (5) whether the plaintiff was represented by or consulted with an attorney, and (6)

4

> whether the consideration given in exchange
> for the waiver exceeds employee benefits to
> which the employee was already entitled by
> contract or law.

Id. (citations omitted). This list is not exclusive, and a court need not address each of these six factors when determining whether a release was entered into knowingly and voluntarily. Rather, these are simply six "relevant" factors to consider under the totality of the circumstances test. Id.

Hughes states that he was unsuccessful in attempting to consult with an attorney, that he did not have a hand in preparing the Agreement, and that he "felt pressured" to sign the Agreement because he was told he would be terminated whether he signed it or not. Hughes maintains that, under the totality of the circumstances, these facts indicate that he could not have entered into the Agreement knowingly and voluntarily. We disagree.

Hughes's failure to consult an attorney prior to signing the Agreement does not compel the conclusion that he did not enter into it knowingly and voluntarily. Consultation with an attorney is a relevant, but not dispositive, factor in determining whether a release was entered into knowingly. See O'Hare at 1017. It is not the Casino's fault that Hughes did not consult an attorney. See Williams at 937.

Moreover, Hughes's arguments that he "felt pressured" into signing the Agreement and did not have a hand in drafting the Agreement are insufficient, in the light of other statements, to

5

show that he did not knowingly and voluntarily enter into the Agreement. In his deposition testimony Hughes admitted that he understood that signing the Agreement and accepting the severance pay meant he was releasing the Casino from any claims. Hughes's statement that "[i]t was my understanding that irregardless of whether or not I signed the agreement that I was still terminated from the Grand" does not indicate that he was pressured into signing the Agreement. While Hughes was to be terminated regardless of whether he signed the Agreement, he could have chosen not to sign it, foregone severance pay, and taken legal action against the Casino. He did not. Instead he signed the Agreement and accepted payment. The totality of the circumstances indicate that Hughes knowingly and voluntarily entered into the Agreement, thereby releasing the Casino from all claims arising out of his employment and termination. Therefore, there was no issue of material fact, and the district court properly granted summary judgment in favor of the Casino and Peterson.

Because we find that Hughes knowingly and voluntarily released the Casino from any claims, we need not reach the district court's alternative grounds for granting summary judgment.


## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Defendants-Appellees Grand

6

Casino, Inc., and Jim Peterson.