United States Court of Appeals,

Fifth Circuit.

No. 93-2478.

Cynthia WILLIAMS, Lorenzo Harris, Shelly Hill, Hallie Cloud, Frelander Yarbrough, Jr., Donald Jackson, Clyde Warner, Dwjana Lawson, Jackie Martin, and Huey Cunningham, Individually and on Behalf of All Others Similarly Situated, Plaintiffs-Appellants,

v.

 PHILLIPS PETROLEUM COMPANY, W. Wayne Allen, and C.J. Pete Silas, Defendants-Appellees.

June 24, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before SMITH and BARKSDALE, Circuit Judges, and WALTER,[*] District Judge.

JERRY E. SMITH, Circuit Judge:

Plaintiffs appeal a summary judgment in favor of defendants on claims under the Worker Adjustment and Retraining Notification Act ("WARN"). Finding no error, we dismiss the appeal. Concluding that the appeal is frivolous and that plaintiffs' counsel's attacks on opposing counsel and the district court are baseless and scurrilous, we award attorneys' fees and double costs under FED.R.APP.P. 38.

I.

A.

In 1992, Phillips Petroleum Company, Phillips Gas Holding Company, Inc. ("PGHC"), and Phillips 66 Company, a division of

[*]District Judge of the Western District of Louisiana, sitting by designation.

1

Phillips Petroleum Company, reduced their work forces at their Houston Chemical Complex ("HCC"). Phillips Petroleum Company laid off over 500 employees in Bartlesville, Oklahoma, and provided them with sixty days' advance written notice. The company laid off many of those employees in May 1992, including Clyde Warner, Dwjana Lawson, Jackie Martin, and Huey Cunningham (the "Bartlesville plaintiffs").

HCC laid off twenty-seven employees who worked at three different locations in the Houston area and did not give any of them sixty-day written notices. HCC laid off five employees in December 1991, sixteen employees from March to July 1992, and six employees in September 1992. From March through June 1992, PGHC laid off forty employees who worked in three different single sites of employment. Thirty-one employees worked in Bartlesville, Oklahoma, eight in Houston, and one in Washington, D.C.

PGHC gave all the employees who worked in Bartlesville and four employees who worked in Houston sixty days' written notice of the layoff. The remaining laid-off PGHC employees did not receive sixty days' notice.

Five of the plaintiffs (collectively "Williams" or the "original plaintiffs") worked for HCC, which laid off Cynthia Williams and Shelly Hill in March 1992 and Hallie Cloud, Frelander Yarbrough, Jr., and Donald Jackson in September 1992; the other named plaintiff, Lorenzo Harris, worked for PGHC in Houston. PGHC laid off Harris in March 1992. The defendants did not provide sixty-days' written notice to any of the original plaintiffs. No

original plaintiff worked in Bartlesville, although the Bartlesville plaintiffs all worked in Bartlesville.

Phillips Petroleum Company laid off the Bartlesville plaintiffs in March 1992 and provided sixty-day written notices. The original and Bartlesville plaintiffs all signed releases after their terminations in exchange for enhanced layoff benefits.

B.

The original plaintiffs brought this action for alleged violations of WARN, 29 U.S.C. §§ 2101-2109, alleging that Phillips Petroleum Company and two of its officers, W.W. Allen, and C.J. Silas (collectively "Phillips"),[1] laid them off without providing the sixty-day written notice required by WARN.

On January 25, 1993, defendants requested summary judgment on the grounds that WARN was not implicated because the layoffs were not from a single site and that even if the single-site requirement was met, the plaintiffs had signed written releases of their claims against Phillips. Plaintiffs filed a cross-motion for summary judgment, asking that the written releases be declared invalid.

On April 26, 1993, the original plaintiffs moved to join

_____

[1]Because we dismiss all defendants for failure to state a valid WARN claim, we need not address the issue of whether WARN permits liability to be imposed on individual defendants such as Allen and Silas. We note that individuals are excluded by WARN's plain terms, as WARN covers only an "employer," defined as a "business enterprise" that employs "100 or more employees." 29 U.S.C. § 2101; *Wallace v. Detroit Coke Corp.,* 818 F.Supp. 192, 194 (E.D.Mich.1993). Construing a similar definition of "employer" in title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), we recently held that a natural person who does not otherwise qualify as an "employer" cannot be held liable for backpay. *See Grant v. Lone Star Co.,* 21 F.3d 649, 653 (5th Cir.1994).

unnamed new parties to the lawsuit, stating that the new parties would be individuals who had been laid off from Phillips's operations in Bartlesville. The district court denied the motion.

The district court granted summary judgment to Phillips in an order and separate judgment entered on June 8, 1993. In that order, the district court identified several outstanding motions from both parties, rendered summary judgment for Phillips on all issues, and declared all other motions pending at that time to be moot.

On June 14, 1993, the plaintiffs attempted to have the Bartlesville plaintiffs join this action. In an order of July 26, 1993, the court denied all motions filed after the entry of final judgment. The court reserved ruling in its July 26 order on the defendants' bill of costs, which included a request for attorneys' fees, and has not ruled on the defendants' bill of costs at this time.

II.

Plaintiffs stated in their notice of appeal that they were appealing "the final judgment entered in this action on the 8th day of June, 1993." In its June 8 order, the court rendered summary judgment on the original plaintiffs' claims against the defendants, denied the original plaintiffs' motion for summary judgment, and held that all other pending motions were moot. The court issued another order dated July 26, denying all motions filed after the June 8 order, including the original plaintiffs' attempt to join the Bartlesville plaintiffs. Because the plaintiffs appealed only

4

the June 8 order, the only issues the plaintiffs perfected for appeal are the decisions made in that order.  The motion to join the Bartlesville plaintiffs has not been preserved for appeal.

III.

A.

The district court rendered summary judgment because no mass layoff occurred at the single sites of employment where the original plaintiffs worked.  Whether multiple work locations constitute a "single site of employment" under WARN is a mixed question of fact and law.  *Carpenters District Council v. Dillard Dep't Stores,* 15 F.3d 1275, 1289 (5th Cir.1994).  Reviewing *de novo* the issue of whether the Houston and Bartlesville employment locations constitute a "single site of employment", we agree with the district court and hold that the Houston and Bartlesville locations were not a single site of employment.

WARN requires covered employers to provide "affected employees" notice of a mass layoff.  "Affected employees" include "employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer."  29 U.S.C. § 2101(a)(5).  A "mass layoff" is defined as any employment loss at a single site of employment that involves one-third of the employees at that site and at least fifty employees, or at least 500 employees.  29 U.S.C. § 2101(a)(3);  20 C.F.R. § 639.3(c).  If a "mass layoff" occurs, the employer must provide written notice to each affected employee at least sixty days prior to the layoff and inform various state

5

and local officials of the mass layoff. 29 U.S.C. § 2102. An employer who violates WARN is liable for back pay, lost benefits, civil penalties, and attorneys' fees. 29 U.S.C. § 2104.

### 1.

The statute does not define a "single site of employment." The rules promulgated by the Secretary of Labor provide that "[n]on-contiguous sites in the same geographic area which do not share the same staff or operational purpose should not be considered a single site." 20 C.F.R. § 639.3(i)(4). Groups of structures within a campus or industrial park, or separate facilities across the street from one another, may be considered a single site of employment. Two plants on opposite sides of a town do not constitute a single site of employment if they employ different workers. *See* 20 C.F.R. § 639.3(i)(1), (4).

The Houston and Bartlesville layoffs cannot be aggregated to bootstrap the Houston plaintiffs over the WARN minimum required for a mass layoff. The regulations indicate that two plants across town will rarely be considered a single site for purposes of a mass layoff. It is not plausible, under any reasonable or good-faith reading of the regulations, that the Houston and Bartlesville plants—located in different states and hundreds of miles apart—could be considered a "single site" for purposes of WARN.

Employees were not rotated between the different sites, and the locations did not share staff and equipment. *See* 20 C.F.R. § 639.3(i)(3). No other "unusual circumstances" have been alleged that would support classifying the two plants as a "single site."

6

*See* 20 C.F.R. § 639.3(i)(8); *Carpenters,* 15 F.3d at 1290. As the Bartlesville and Houston sites are distinct, they may not be aggregated in order to meet the minimum employee requirements of WARN. 20 C.F.R. § 639.3(i)(1); *International Union, United Mine Workers v. Jim Walter Resources, Inc.,* 6 F.3d 722, 724-27 (11th Cir.1993). The Bartlesville layoffs, accordingly, are irrelevant to the issue of whether the Houston employees were entitled to notice under WARN.

No mass layoff occurred at the single sites of employment where the original plaintiffs worked. Five of the plaintiffs worked at HCC's operations in three different locations in and around Houston. HCC laid off twenty-seven employees over a ten-month period. One of the named plaintiffs worked for PGHC in Houston; PGHC laid off eight employees who worked at that site. The layoffs at HCC and PGHC were not mass layoffs as defined by the Act, as the number of employees laid off did not meet the fifty-employee minimum. Thus, the Houston employees were not entitled to WARN notification.

2.

Williams contends that the mass layoff in Bartlesville triggered the applicability of WARN, requiring that notice be given to those laid off in Houston. *See* Department of Labor Comments, 54 Fed.Reg. 16042, 16046 (1989). Even if we assume that these comments have legal effect, they apply only if the employees at the single site suffering the mass layoff are relocated to other sites, thereby "bumping" employees at those sites. Moreover, those likely

7

to be bumped must be individually and reasonably identifiable at least sixty-five days before the bumping occurs. *Id.*

A WARN event at the first site will trigger a WARN event at the second site only if a sufficient number of workers are bumped at the second site to trigger WARN independently. Plaintiffs have not alleged that any bumping occurred and have ignored the plain language of the department's comment limiting it to bumping situations.

3.

Over 500 employees were laid off in Bartlesville. Williams contends that Phillips's notice to those employees was defective. This claim fails for two reasons. First, the claims of the Bartlesville plaintiffs are not properly before us, as they failed to perfect their appeal. Second, even if we had jurisdiction, Phillips's alleged acts did not violate WARN.

There is no dispute in the record that Phillips provided sixty-day written notices to all employees laid off in Bartlesville. For some of the employees laid off, Phillips continued to pay their base pay and benefits during all or part of the sixty-day notice period but placed them on "excused leave with pay." The employees were not terminated at this time. The notices submitted by Phillips stated that the layoff date was at least sixty days after the notice date. There is no evidence to support the assertion that Phillips immediately terminated the individuals laid off in Bartlesville.

Moreover, the premise of Williams's argument is of

8

questionable validity.  Excused leave with pay and benefits, with no corresponding duty to work, cannot harm an employee.  WARN was intended to provide employees with notice so that they could adjust to the layoff and locate other work.  Fully-paid excused leave complies with these purposes.

## B.

The district court also rendered summary judgment for Phillips because the plaintiffs had signed releases covering the allegations made in their complaint.  The plaintiffs filed a cross-motion for summary judgment contesting the validity of the releases.  The district court properly granted Phillips's motion, thereby rejecting plaintiffs'.[2]

Normally the release of federal claims is governed by federal law.  *See, e.g., O'Hare v. Global Natural Resources, Inc.,* 898 F.2d 1015, 1017 (5th Cir.1990) (Age Discrimination in Employment Act ("ADEA"));  *Rogers v. General Elec. Co.,* 781 F.2d 452, 454 (5th Cir.1986) (title VII of the Civil Rights Act of 1964).  Public policy favors voluntary settlement of claims and enforcement of releases, *Rogers,* 781 F.2d at 454, but a release of an employment or employment discrimination claim is valid only if it is "knowing" and "voluntary," *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 52 n. 15, 94 S.Ct. 1011, 1022 n. 15, 39 L.Ed.2d 147 (1974).  Once a party establishes that his opponent signed a release that addresses

---

[2]Although this discussion is unnecessary to the issue of whether WARN was violated, given our holding in part III.A., *supra,* we include it as a further indication that this action is frivolous.

9

the claims at issue, received adequate consideration, and breached the release, the opponent has the burden of demonstrating that the release was invalid because of fraud, duress, material mistake, or some other defense. We examine the totality of circumstances to determine whether the releasor has established an appropriate defense. *O'Hare,* 898 F.2d at 1017.

1.

Each original plaintiff signed a release shortly after his or her termination of employment. The releases stated that signing the release was a condition to participation in the company's enhanced supplemental layoff pay plan, advised the employee to consult an attorney, gave ample time to consider the release, and specifically covered all claims relating to the individual's employment or layoff. The Bartlesville plaintiffs signed similar releases.

The requirements of WARN pertain to an individual's employment and termination, issues addressed in the releases. Phillips provided enhanced benefits for those employees who signed the releases. These benefits were in addition to the basic severance plan benefits that the employees would have received regardless of whether they had signed the releases. The original plaintiffs are making claims on matters addressed in their release, and the Bartlesville plaintiffs attempted to join the lawsuit that involved claims on matters addressed in their release. Thus, all elements of a valid release are present.

Williams has provided no credible evidence that the releases

were obtained by fraud or duress. There is no genuine issue of material fact that the releases were valid.

Williams contends that the releases were invalid because they did not mention WARN. This argument is meritless. There is no obligation under WARN or the common law for the defendants to mention WARN for the releases to be valid. The releases stated that they included all claims relating to the "time of my employment or to my layoff...." WARN applies to layoffs and the releases addressed all claims related to the plaintiffs' layoffs; thus, the releases barred WARN claims. *See Fair v. International Flavors & Fragrances, Inc.,* 905 F.2d 1114, 1117 (7th Cir.1990) (holding that a release of claims relating to employment barred claim under Employee Retirement and Income Security Act of 1974 ("ERISA")); *Stroman v. West Coast Grocery Co.,* 884 F.2d 458, 461 (9th Cir.1989), *cert. denied,* 498 U.S. 854, 111 S.Ct. 151, 112 L.Ed.2d 117 (1990); *Franz v. Iolab, Inc.,* 801 F.Supp. 1537, 1543 (E.D.La.1992) (holding that a release of all claims barred wrongful discharge and ERISA claims).

Plaintiffs also argue that the waivers did not comply with the Older Workers Benefit Protection Act ("OWBPA"), 29 U.S.C. § 626(f). Plaintiffs have asserted no age discrimination claim, and their proffered analogy between WARN and the ADEA does not survive scrutiny. The OWBPA places specific requirements on waivers of age discrimination claims in order for them to be considered knowing and voluntary. This statute is a change from the common law, and there is no similar obligation imposed on employers under WARN.

11

Williams contends that the waivers are invalid under a totality of the circumstances test. She claims that the combination of five factors makes the waivers invalid, but she identifies no precedent suggesting that these factors are dispositive. Williams carried the burden to demonstrate that there was a genuine issue of material fact on a defense to the validity of the releases. She was obligated to produce some evidence of fraud, duress, or other basis for holding the release invalid. *See Widener v. Arco Oil & Gas Co.,* 717 F.Supp. 1211, 1215 (N.D.Tex.1989). She has not done so, thus summary judgment was appropriate.

Even if we accept Williams's statement of the totality of circumstances test, she cannot prevail. She identifies several elements to consider: (1) a plaintiff's education and business experience; (2) the role of each plaintiff and class member in deciding the terms of the release; (3) the clarity of the agreement and all related documents referred to in the releases; (4) whether each plaintiff and class member was represented by or consulted with an attorney; and (5) the amount of time each plaintiff and class member had possession of or access to the release before signing it.

Concerning the plaintiffs' education and business experience, there no evidence suggesting that they could not read or understand the releases. The cases relied upon by the plaintiffs are distinguishable by whether the individual who signed the release understood the claims released. There is nothing in the record

12

establishing a genuine issue of material fact that the plaintiffs did not know what they were doing.

Plaintiffs argue that none of them negotiated the terms of the releases. There is no evidence that plaintiffs were denied an opportunity to negotiate, nor that they were given a "take it or leave it" offer. The releases informed each employee that he should consult a lawyer and allowed a reasonable period, in most instances up to forty-five days, to consider the releases. The plaintiffs signed the releases and never asserted in their declarations that Phillips had precluded them from negotiating. There is no evidence sufficient to create a genuine issue of material fact.

The releases were clear, simple, and easily understood. The release precluded all claims related to the plaintiffs' "employment" or "layoff." This is not technical jargon, and it covers the plaintiffs' WARN claims. The plaintiffs do not indicate what provisions could have been incomprehensible to them, as they were written in plain English. There is also no evidence of duress that could have forced them to sign involuntarily.

The plaintiffs also claim that the releases should be invalidated because the defendants presented no evidence that each plaintiff and class member actually consulted with an attorney. The releases signed by the plaintiffs stated:

> You should thoroughly review and understand the effect of the release before signing it. To the extent that you have any claims covered by this release, you will be waiving potentially valuable rights by signing. You are also advised to discuss this release with your lawyer.

13

Thus, defendants advised the plaintiffs to consult a lawyer. Plaintiffs suggest that Phillips should have offered to supply a lawyer, but they offer no authority imposing this duty. Even without signing the releases, plaintiffs were entitled to substantial layoff benefits that could have been used to finance a lawyer, either individually or jointly. It is not Phillips's fault that the plaintiffs chose not to consult a lawyer after being advised to do so. Plaintiffs do not contest the final element of the test, as they were given as much as forty-five days to consider the releases.

2.

Even if a release is tainted by misrepresentation or duress, it is ratified if the releasor retains the consideration after learning that the release is voidable. A person who signs a release, then sues his or her employer for matters covered under the release, is obligated to return the consideration. Offering to tender back the consideration after obtaining relief in the lawsuit would be insufficient to avoid a finding of ratification. *Grillet v. Sears, Roebuck & Co.,* 927 F.2d 217, 220-21 (5th Cir.1991).

For signing the releases, the original plaintiffs as a group received $210,853.65 in consideration in an enhanced plan benefits and $56,632.38 in basic plan benefits. The original plaintiffs did not return the consideration to the defendants, even after making claims that the releases were voidable. Thus, the plaintiffs ratified the releases even if, *arguendo,* they were not knowingly and voluntarily signed. *Grillet,* 927 F.2d at 220.

14

IV.

Plaintiffs argue that the district court abused its discretion by not giving them time to conduct discovery and prepare affidavits to support their opposition to the defendants' motion for summary judgment. Plaintiffs complain that the court did not rule on their motion for continuance. This is incorrect. The court noted that the motion for continuance was outstanding and determined that all pending motions other than the defendants' summary judgment motion were moot. As a result, the court denied the continuance.

Summary judgment was awarded because plaintiffs did not work at single sites of employment and had released their claims. These were pure issues of law. There are no issues of fact that would require additional discovery. Thus the court did not err by refusing to grant a continuance.

Plaintiffs also complain that Phillips did not answer discovery based upon the events in Bartlesville. Because all the plaintiffs worked in Houston, however, events in Bartlesville were irrelevant to their case. Thus, no further discovery was necessary.

Plaintiffs have asserted a number of other discovery requests. But they have not explained how these discovery matters are relevant to any issue in the case. Moreover, to the extent these discovery materials may be relevant, plaintiffs have not indicated what information they seek that would be sufficient to create a genuine issue of material fact. Denial of these requests was

15

appropriate.

Plaintiffs also assert that the district court abused its discretion by denying their motion to join new parties. The plaintiffs made this motion before the district court rendered summary judgment but did not identify the parties they sought to add until after judgment was entered. The court acted properly in denying the motion, as plaintiffs identified no specific parties that needed to be added by the time the court ruled on the motion. There was no basis for the district court to grant the motion without having specific parties to add.

## V.

Plaintiffs' attorney, Julius J. Larry, III, contends that Phillips's outside attorney, Kerry E. Notestine, engaged in improper *ex parte* communications with the district judge, the magistrate judge, and their law clerks. The record is singularly devoid of evidence that the contacts were improper. Moreover, these same accusations were briefed and rejected in the district court. Lacking any evidence that the contacts were improper, the accusations of plaintiffs' counsel are scurrilous, frivolous, and contrary to the duties of an officer of the court. Larry's legal arguments are also frivolous and independently deserving of sanctions.

## A.

Larry seeks to mislead this court about the circumstances of the alleged improper contacts. He attempts to prove his conclusion of unethical conduct by Phillips's counsel by seriously misquoting

16

defendants' counsel's time records, omitting important facts from the description of counsel's activities, and drawing unsupported conclusions. The defendants responded to these accusations in the district court. Serenely undeterred by his lack of success, Larry has renewed his personal attack against defendants' counsel in this court.

This issue arose from defendants' submission of a bill of costs in the district court. In their bill of costs, the defendants moved for attorneys' fees because the district court specifically found the plaintiffs' lawsuit was frivolous. The defendants attached billing records summarizing the activities performed by their counsel on the case. In their appeal brief, plaintiffs have excerpted sections identifying five contacts between Notestine and the case managers to Judges Harmon and Stacy relating to scheduling matters and a discovery conference. The plaintiffs admit, as they must, that counsel may communicate with these individuals. Notestine also had one telephone conversation with Vivian Craft, Judge Stacy's law clerk, but that conversation was initiated by Craft and was for a legitimate purpose.

Reviewing each of the allegedly improper contacts, Larry's duplicity in imputing unethical conduct to Notestine becomes apparent. For instance, in his brief on appeal, Larry reproduces the first contact as follows:

    4/14/93   1.80 (Hours)   Telephone conference with clerk to Judge Harmon.

-----

The record indicates that this excerpt should read:

17

     4/14/93    1.80 (Hours)    Telephone conference with clerk to
Judge Harmon re:  status;  telephone conference with Rob Fries re:
same;   preparation of discovery response to sent to other side;
review of reply to defendants response to plaintiff's motion for
leave to supplement their complaint;  transmitting same to client.

                              -----

Comparing Larry's excerpt with the accurate report, Larry plainly

intended to mislead this court into believing that Notestine spoke

with for almost two hours with Judge Harmon's law clerk.  The

context of the full billing report, however, indicates that the

phone conversation occupied only a small portion of the time.

Moreover, because this entire issue was already briefed in the

district court, Larry knew that Notestine's communication was

actually with Judge Harmon's case manager, not any law clerk.

Larry admits that contacts with a case manager are permissible.

Despite recognizing that the time sheet should read "case manager"

rather than "law clerk," he doggedly and irrelevantly continues to

argue that law clerks should not communicate with parties.

     Larry reproduces the second contact as follows:

     5/5/93     .20 (Hours)    Telephone conference with clerk to
Judge Stacy.

                              -----

In full, the time sheet actually reads:

     5/5/93     .20 (Hours)    Telephone conference with clerk to
Judge Stacy re:  hearing requested.

                              -----

Again, Larry is aware that this contact was actually with Judge

Stacy's case manager, not her law clerk.  The substance of the

conversation dealt with Judge Stacy's impending maternity leave and

18

whether the parties would be able to have a discovery and motion conference before she went on leave.

The third contact is identified by Larry as follows:

5/14/93    .40 (Hours)   Telephone  conference with Vivian Craft, law clerk to Judge Stacy.

-----

The full text of the time sheet reads:

5/14/93    .40 (Hours)   Telephone conference with Rob Fries re:  status;  telephone conference with Vivian Craft, law clerk to Judge Stacy, re:  discovery conference.

-----

Vivian Craft was Judge Stacy's law clerk.  But this contact was initiated by her, not by Notestine, and the time records indicate that the conversation related only to the discovery conference.

According to Larry, as set forth in his appellate brief, the fourth communication reads:

5/19/93    .60 (Hours)   Telephone  conference  with clerk to Judge Harmon re:  resolution on motions.

-----

Again, reality differs dramatically from Larry's brief:

5/19/93    .60 (Hours)    Telephone conversation with clerk to Judge Harmon re:  resolution of motions;  telephone conference with Rob Fries re:  same.

-----

Again, "clerk to Judge Harmon" refers to her case manager, not her law clerk, and there is nothing improper about contacting a case manager for this purpose.

Larry's characterization of the fifth contact is probably the most egregious misstatement of all:

19

    4/28/93    1.30 (Hours)    Telephone    conference    with Judge Harmon.

-----

In reality, the record reads as follows:

    4/28/93    1.30 (Hours)    Telephone conference with Rob Fries re: rule 26(f) conference; research re: same; review of motion to add parties; transmitting same to client; telephone conference to Judge Harmon re: same; telephone conference with Rob Fries re: same.

-----

Larry obviously hopes to mislead this court in a number of ways with his characterization of this time record.  First, he implies that Notestine spoke directly with Judge Harmon for 1.3 hours.  Defendants never spoke to Judge Harmon about the case and never attempted to do so, much less for a full 1.3 hours.  As Phillips's counsel explained long ago, the reference to a "telephone conference to Judge Harmon" was an abbreviated reference or typographical error relating to a conversation with Judge Harmon's case manager, not the judge herself, about a rule 26(f) conference.

    In advancing his claim, Larry has attempted to mislead the court by blatantly misrepresenting the record.  Trying to sell this court on his conspiracy theories, he has attempted to put a veneer of impropriety on innocent contacts by quoting selectively from Notestine's time sheets and even mischaracterizing the parties involved.  We will not stand by idly and allow an attorney to waste the time of this court and maliciously denigrate the reputations of judges and other officers of the court.

    Moreover, Larry has not explained, either in his brief or in his ample opportunity at oral argument, why he has raised this

20

issue at all. He has asked for no remedy, such as overturning the judgment. His only discernible motive is to cast brickbats and to "poison the well" by tattling on his opponent. Such motives hardly justify his baseless allegations and his attempt to lie to this court regarding what is in the record.

Upon determination that an appeal is frivolous, we "may award just damages and single or double costs to the appellee." FED.R.APP.P. 38. Larry has attempted to mislead this court for no legitimate end. He has wasted the time and energy of opposing counsel and of this court. As a result, we exercise our power to impose sanctions on plaintiffs and their counsel for filing a frivolous appeal.

## B.

Importantly, the plaintiffs' assertions, made through Larry, are not based upon any reasonable or good-faith reading of applicable law. They are utterly baseless and bizarre. The district court explained this in its comprehensive order granting summary judgment. At that point, any attorney should have advised his clients of the loss and urged them to pursue the matter no further.

Seven pages of Phillips's fifty-page brief were required to rebut Larry's misguided charges of misbehavior. The plaintiffs' challenge to the validity of the waivers rests on a frivolous theory equating WARN with the OWBPA. Larry forced Phillips to defend against the claims of the Bartlesville plaintiffs, who were not even properly parties to this appeal. His argument for the

21

applicability of WARN rests on comments by the Labor Department applicable only to employees bumped from their jobs by senior employees, a situation that is not alleged to apply here. Finally, although we have not reached the merits of the issue, his attempt to impose individual liability upon Silas and Allen lacks any colorable foundation in the language or structure of WARN.

## C.

"[C]osts and attorneys' fees [under rule 38] are merited for a frivolous appeal the result of which is obvious from the comprehensive and decisive exposition of the law by the judge below." *Coghlan v. Starkey,* 852 F.2d 806, 810 (5th Cir.1988) (per curiam) (footnote omitted). In response to inquiry by the court, defendants' counsel documents $32,765.50 for attorneys' fees and $3,039.22 in costs associated with responding to plaintiffs' appeal. Other than charges for in-house legal fees, these are fees actually billed to defendants by outside counsel.

The plaintiffs have not disputed the reasonableness of these fees. We have held that fees imposed as a sanction need not be fully compensable. *See Atwood v. Union Carbide Corp.,* 850 F.2d 1093, 1094 (5th Cir.1988) (per curiam). We need not decide whether the fees claimed here are justified, for we conclude that fees of $20,000 are supportable and will serve adequately as a sanction. For this reason, we also need not decide whether the in-house legal fees of $5,607.00, included in the amount claimed, may be recovered.

## D.

Given the generally frivolous nature of the appeal, exacerbated by Larry's scurrilous attacks on Phillips's counsel and the district court, pursuant to rule 38 we order the original plaintiffs, Larry, and Justice Center-Houston, which is of counsel on appeal, to pay Phillips's attorneys' fees of $20,000.00 and attorneys' costs of $3,039.22, plus double taxable costs on appeal. We also warn plaintiffs that further vexatious filings in this case, including any frivolous petition for rehearing or suggestion of rehearing *en banc,* will subject the plaintiffs and their counsel to further sanctions and/or discipline.

The appeal is DISMISSED as frivolous. *See* 5TH CIR.R. 42.2.