William E. EDDINS, et al.

v.

**EXCELSIOR INDEPENDENT SCHOOL DISTRICT, et al.**

Nos. 9:96–CV–107, 9:96–CV–108.

United States District Court, E.D. Texas, Lufkin Division.

March 15, 2000.

---

William Eugene Parham, Parham's Law Office, Hempstead, TX, for plaintiff.

David Feldman, Feldman & Rogers LLP, Houston, TX, Jeffrey L. Rogers, Sheila Pimpler Haddock, Feldman & Rogers, Houston, TX, for Excelsior Independent School District, defendant.

Wayne D. Haglund, Attorney at Law, Lufkin, TX, for Shelby County Special Education Cooperative, defendant.

C. Robert Mace, Fulbright & Jaworski, Houston, TX, for Timpson Independent School District, as Managing Partner of Shelby County Special Education Cooperative, defendant.

Craig Carter, Attorney General's Office, General Litigation Division, Austin, TX, Katherine Aborah Antwi, Texas Education Agency, Austin, TX, for State of Texas, Texas Education Agency, defendant.

### ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION RE: DEFENDANT EXCELSIOR INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

HANNAH, District Judge.

These consolidated actions are referred to a United States magistrate judge with instructions to submit a written report and recommendation regarding dispositive motions. *See* 28 U.S.C. § 636(b)(1)(B).

The magistrate judge has submitted a report recommending that the court deny the motion for summary judgment filed by defendant, Excelsior Independent School District. Defendant Excelsior timely objected to the proposed findings, conclusions and recommendations of the magistrate judge.

Upon conducting a *de novo* review of the magistrate judge's report and defendant's objections, the court concludes that the magistrate judge correctly determined that genuine issues of material fact preclude the court from concluding as a matter of law that plaintiffs' actions are moot or barred by prior release. It is therefore

ORDERED that defendant Excelsior's objections are OVERRULED. It is further

ORDERED that the report and recommendation of the magistrate judge is ADOPTED.

An order denying Excelsior's motion for summary judgment will be entered separately.

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HINES, United States Magistrate Judge.

These consolidated actions are referred to the undersigned United States magistrate judge for consideration of pretrial matters. The referral order directs the magistrate judge to submit a report and recommendation regarding motions for injunctive relief, judgment on the pleadings, summary judgment, and dismissal.[1]

Before the court is "Defendant Excelsior Independent School District's Motion for Summary Judgment." (*See* Docket No. 118.) This report addresses that motion.

### Nature of Suit

These actions, filed in March, 1996, emanate from a dispute over federal educational rights of two children, "Mary W." and "Christy McD.," both of whom allegedly have learning disabilities. The original boundaries of the dispute were described previously. *See Eddins v. Excelsior Indep. Sch. Dist.*, 1997 WL 470353 at *4–6 (E.D.Tex. Aug. 6, 1997). However, a brief summary of the controversy is appropriate here:

Christy McD. attended classes at Shelby County Special Education Cooperative from 1986 to 1993, after being identified as needing special instruction. *See id.* at *4.

---

1. *See* 28 U.S.C. § 636(b) (1994) and Local Rules for Assignment of Duties to Magistrate Judges.

Plaintiffs maintain that Christy McD. was not provided with means to interact with children who were not special education children, and contend that the Shelby County Special Education Cooperative was not the least restrictive environment for Christy McD.'s instruction. *See id.* The crux of plaintiffs' complaint, therefore, is that the school district failed to "mainstream" Christy McD.'s education. *Id.*

Likewise, plaintiffs complain that Mary W. did not receive an appropriate education. *See id.* Plaintiffs complain that Excelsior Independent School District (Excelsior ISD) initially failed to test Mary W. to determine whether she needed special education, even though she was held back to repeat pre-kindergarten. *See id.* Further, after Mary W.'s special education requirements were known, her mother was not included in "ARD meetings," [2] and Mary W. received less specialized attention than the ARD committee recommended for her individualized education program (IEP).[3] *See id.*

Unhappy with these circumstances, plaintiffs requested administrative due process hearings wherein they challenged the children's placements and services provided by Excelsior ISD through the Shelby County Special Education Cooperative. *See id.* at *5. At a pre-hearing conference, the Texas Education Agency (TEA) hearing officer concluded that certain demands

of plaintiffs were outside her jurisdiction.[4] *See id.* Thus, formal hearings would concern only appropriate educational classifications and services for the two children. *See id.*

On the eve of the hearings, Excelsior ISD moved for entry of judgment. *See id.* As grounds, Excelsior ISD stated that all "settlement demands" of plaintiffs pertinent to the formal hearings were accepted by Excelsior ISD. *See id.* The administrative hearing officer found that the motion constituted a tender of judgment, and thereafter entered judgments in each case requiring Excelsior ISD to take certain actions on behalf of each child. *See id.* at *6. In the case of Mary W., Excelsior ISD was ordered to:

1. Hire a consultant to do a comprehensive evaluation of the special education program at Excelsior ISD and the Shelby County Co-op;

2. Allow Petitioner full access to the consultant during the period of review;

3. Implement the changes recommended by the special education consultant by the 1994–95 school year as far as practicable; and

4. Provide extended year comprehensive services up to a total cost of

---

**2.** ARD stands for admission, review, and dismissal. *See Eddins,* 1997 WL 470353 at *4, n. 6. An ARD committee is composed of school officials and parents who have the responsibility for developing an individualized education program and placing the child in an appropriate program. *See id.*

**3.** Plaintiffs allege that at a second ARD meeting it was concluded that Mary W. needed special education in language arts, mathematics, science, social studies, speech therapy and health, but not in library/music, physical education, computer or science lab. Further, on January 11, 1993, she was assessed while a student at Tenaha Independent School District, and it was found that Mary W. should be moved to the Shelby County Special Education Cooperative campus for self-contained classes. A little over a month later, she was

again assessed, and it was concluded that she needed "resource classes" (specialized instruction in a small-group format provided by special education teachers in areas covered by the student's regular education teacher in regular subject classes) on the campus of Excelsior ISD. Plaintiffs complain that Excelsior ISD provided Mary W. only "modified" classes (specialized assistance for special education students provided in the student's regular subject classes), and minimal speech therapy.

**4.** Plaintiffs sought, *inter alia,* a school funding cut-off; termination of personnel; a change of the executive administrator for the school; an apology from the school board at an open session; compensatory damages and attorney's fees.

$5,000.00 paid to Mary W.'s parent, Sandy W.

*See id.*

The judgment in Christy McD.'s case required that Excelsior ISD:

1. Hire a consultant to do a comprehensive evaluation of the special education program at Excelsior ISD and the Shelby County Co-op;

2. Allow Petitioners full access to the consultant during the period of review;

3. Implement the changes recommended by the special education consultant by the 1994–95 school year as far as practicable;

4. Reimburse Petitioners $16,260.40 for travel and transportation of Christy Renea McD. to Martinsville Independent School District for prior school years;

5. Reimburse Petitioners for all out-of-pocket attorney's fees paid to date;

6. Provide future transportation for so long as Christy Renea McD. is a resident of Excelsior ISD and for so long as she is enrolled as a special education student at Martinsville Independent School District. The manner of provision for future transportation would be left to the determination of Excelsior ISD, to either reimburse Petitioners for transportation costs or provide transportation directly by the Excelsior ISD. The obligation to provide future transportation would cease in the event that Petitioners move out of the Excelsior ISD and/or if Christy Renea McD. ceases to be enrolled as a special education student at Martinsville Independent School District;

7. Pay any cost of tuition to Martinsville Independent School District for Christy Renea McD.'s attendance as a special education student at Mar-

tinsville Independent School District, in the event that the Martinsville Independent School District imposes such a cost in the future. This requirement was further subject to Christy Renea McD.'s continued residence in the Excelsior ISD.

*See id.*

As is now self-evident, the TEA judgments pursuant to settlement did not end the matter. The present litigation ensued. Here, plaintiffs contend that Excelsior ISD did not honor its settlement agreements as embodied in the TEA judgments. *See id.* Thus, they filed suits to enforce the provisions of the TEA administrative judgments. They also sued Excelsior ISD and other defendants for their alleged previous violations of plaintiff minors' civil rights, i.e., alleged wrongs for which the remedies requested were outside the TEA hearing officer's jurisdiction. *See id.* at *7.

Specifically, in addition to enforcing the TEA judgments, plaintiffs seek to bring direct actions under two federal statutes, *viz.*, the Individuals with Disabilities Act ("IDEA")[5] and the Rehabilitation Act of 1973 ("Rehabilitation Act").[6] Plaintiffs further sought to impose liability derivatively under general Reconstruction civil rights statutes.[7] Finally, plaintiffs sought to append various state law causes of action for slander, wrongful death, lost wages, and injunctive relief requiring termination of school administrators, replacement of teaching personnel, and an open-meeting apology from one school defendant's Board of Trustees.

**Proceedings**

■ Although plaintiffs' amended complaints alleged multiple claims against multiple defendants, the court has narrowed issues and parties for trial. By order entered in January, 1999, original defendants Timpson Independent School District and Shelby County Special Education Coopera-

5. *See* 20 U.S.C. § 1400 et seq.

6. *See* 29 U.S.C. § 794.

7. *See* 42 U.S.C. §§ 1981 – 1985.

tive were dismissed entirely. (*See* Docket No. 86.) That order further dismissed all federal claims asserted against Excelsior ISD, except for an action under 42 U.S.C. § 1983 for enforcement of administrative judgments of the Texas Education Agency (TEA). *See id.* Finally, by report filed on September 7, 1999, the undersigned recommended that TEA be dismissed in these actions. (*See* Docket No. 109.) Thus, unless the court elects to entertain plaintiffs' state law claims,[8] the only cause of action remaining against Excelsior ISD is under Section 1983 for enforcement of the TEA administrative judgments.[9]

### Excelsior ISD's Motion For Summary Judgment

Excelsior ISD's motion addresses the Section 1983 claim and asserts that Excelsior ISD is entitled to summary judgment. First, Excelsior ISD argues that plaintiffs cannot prosecute a Section 1983 claim to enforce the TEA judgments because they subsequently released Excelsior ISD from any and all claims based on those orders. (*See* Def.'s Mot. for Summ.J. at 3–4.) Second, Excelsior ISD argues that these actions are moot because neither Mary W. or Christy McD. has attended school in Excelsior ISD since the end of the 1993–94 school year. *See id.* at 4. Thus, the court lacks subject matter jurisdiction for want of a case or controversy.[10]

---

8. A report regarding the court's exercise of supplemental jurisdiction will be entered simultaneously.

9. Section 1983 may be used to enforce federal substantive rights that are established in a favorable IDEA administrative decision, when the statute or state law lacks a specific enforcement provision. *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1272–75 (4th Cir. 1987); *see also Jeremy H. v. Mount Lebanon Sch. Dist.*, 95 F.3d 272, 279 (3d Cir.1996) (noting that four Federal district courts have arrived at the same conclusion).

10. Excelsior ISD advances a third ground that argues that plaintiffs are not entitled to monetary damages. Excelsior ISD relies on cases holding that general monetary damages are not available in direct IDEA actions, and, therefore, are not recoverable in tag-along

In response, plaintiffs argue that a genuine issue of material facts exists; therefore, summary judgment is not appropriate. (*See* Docket No. 154.) First, plaintiffs contend that the release documents do not bar their suits because plaintiffs only released "liability for the past payments ordered" by the ALJ. *Id.* at 6. Second, plaintiffs argue that these cases are not moot, even though Mary W. withdrew from Excelsior ISD, because Mary W. withdrew after Excelsior ISD failed to provide the education mandated by IDEA, and Mary W. is capable of returning to Excelsior ISD. *See id.* at 11. Finally, plaintiffs argue that the actions are not moot because enforcement of judgments do not depend on the residence of the enforcer.[11] *See id.*

### Discussion and Analysis

Excelsior ISD's mootness argument challenges the court's subject matter jurisdiction, whereas its release and discharge argument asserts that Excelsior ISD is entitled to judgment on grounds of a meritorious affirmative defense. Inasmuch as subject matter jurisdiction is a threshold concern, that argument will be addressed first.

### 1. Mootness

The TEA administrative judgments require Excelsior ISD to make certain money payments, and to take prospective

---

actions under 42 U.S.C. § 1983. *See Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994); *Marvin H. v. Austin Indep. Sch. Dist.*, 714 F.2d 1348, 1356 (5th Cir.1983). This report does not address that ground because the issue remaining for trial is neither a direct IDEA action nor a tag-along Section 1983 action. Enforcement of the TEA judgments may or may not require monetary awards if the TEA judgments themselves require payment of money.

11. Plaintiffs further argue that they are entitled to monetary damages if plaintiffs show intentional discrimination. (*See* Docket No. 154.) For the reasons stated in footnote 10, *supra*, the court will not address this argument.

action regarding its special education program. (*See* Def.'s Mot. for Summ.J., Exs. A and B.) Future special education program changes specifically for Mary W. and Christy McD., if any, were to be implemented in the 1994–1995 school year. *See id.* However, neither Mary W. nor Christy McD. has attended Excelsior ISD schools since the end of the 1993–1994 school year. *See id.* at Ex. G, Nos. 2 and 4, and Ex. H, Nos. 8 and 9. Excelsior ISD argues that the children's withdrawal from Excelsior ISD schools renders moot Excelsior ISD's obligations under the TEA decrees.

### A. *Principles of Analysis*

■ The judicial power of United States extends to specified cases and controversies. *See* U.S. Const. art. III, § 2. Federal courts do not have subject matter jurisdiction over an action unless "a case or controversy exists." *See* James Wm. Moore et al., Moore's Federal Practice § 101.02 (3d ed.1999). Article III requires that a claim be live throughout the pendency of the litigation. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990).

■ A federal court must dismiss an action for want of jurisdiction when a case or controversy ceases to exist. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937). This is known as the "mootness" doctrine. Mootness can occur in two ways: (1) when the issues presented are no longer live, and (2) when the parties lack a legally cognizable interest in the outcome. *See Powell v. McCormack*, 395 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969).

### B. *Application*

Excelsior ISD argues that "a student that moves from one school district to another renders moot his Section 1983

claims based on alleged violations of the IDEA." (Def.'s Mot. for Summ.J. at 12.) As legal ground, Excelsior ISD relies on *Smith v. Special Sch. Dist. No. 1*, 184 F.3d 764 (8th Cir.1999). *Smith* held that:

> If a student changes school districts and does not request a due process hearing, his or her right to challenge prior educational services is not preserved. Subsequent challenges to the student's previous education become moot because the new school district is responsible for providing a due process hearing.

*Id.* at 767 (quoting *Thompson v. Board of Special Sch. Dist. No. 1*, 144 F.3d 574, 578–79 (8th Cir.1998)).

*Smith*'s factual scenario, however, differs from the instant actions. In *Smith*, the disabled student moved outside the school district *before* requesting the due process hearing. *See id.* at 764. Here, Christy McD. and Mary W. requested their due process hearings, and also obtained TEA administrative decrees before changing to different school districts. Thus, *Smith* does not entitle Excelsior ISD to summary judgment.

While *Smith* does not govern, its underlying rationale is relevant. *Smith* brings to mind and exemplifies the "stay put" rule enacted under IDEA. *See* 20 U.S.C. § 1415(j).[12] The "stay-put" rule evidences congressional intent that students remain in their assigned public school classrooms during pendency of IDEA proceedings. *See School Committee of Burlington v. Department of Education*, 471 U.S. 359, 373, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985). In effect, the "stay-put" rule is a safeguard ensuring the children will remain in their current educational setting, while proceeding under Section 1415.

■ The "stay-put" rule is a two-edged sword, however. While it protects stu-

---

12. Section 1415 provides:

[D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of such child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed.

20 U.S.C. § 1415(j).

dents against unwanted removal from their classroom by *schools,* it does not protect against consequences of improvident unilateral removal by their *parents.* Thus, the Supreme Court observed that parents who unilaterally withdraw their children from a public school pending completion of review proceedings do so at their own risk of losing IDEA authorized reimbursement for private school tuition and related expenses should the parents' appeal of the school authority's decision be unsuccessful. *See School Committee of Burlington,* 471 U.S. at 373–74, 105 S.Ct. 1996.

The rationale of the "stay-put rule" and its progeny fits the instant suits, even though they do not necessarily govern these Section 1983 actions to enforce TEA judgments. If Excelsior ISD were unable to implement its duties under the TEA decrees because of Mary W.'s and Christy McD's parents unilaterally withdrawing them from Excelsior ISD schools, then Excelsior ISD should be excused from future liability under the decrees.

■ In any event, abandonment of a claim renders it moot. *See Deakins v. Monaghan,* 484 U.S. 193, 200–02, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988); *see also* 13A CHARLES A. WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3533.2 (2d ed. 1984) ("Mootness problems arise from a wide array of circumstances in which the plaintiff has secured the requested relief by some means other than final decision of the litigation, or *has abandoned the quest.*" (emphasis added)).[13] When judgment creditors so remove themselves from the process so as to effectively prevent judgment debtors from honoring or discharging judgments, the judgment creditors in effect have abandoned their judgments. In that event, a court may appropriately conclude that judgment issues are no longer live, and that the judgment creditor lacks a legally cognizable interest in it.

■ Thus, in the instant cases, the students' unilateral withdrawal from Excelsior ISD schools may indeed render some of their judgment claims moot. Under the present record, however, it is impossible to determine what issues, if any, may be moot by reason of abandonment. For example, withdrawal from school may destroy the justiciability of any claim that Excelsior ISD failed to implement changes recommended by the special education consultant by the 1994–1995 school year *if* the evidence at trial shows that Excelsior ISD was prepared to implement those changes. However, an opposite conclusion may be warranted if the evidence shows that Excelsior ISD never hired a consultant to do a comprehensive evaluation of Excelsior ISD's education program, or that plaintiffs were not permitted full access to the consultant during his review, or if Excelsior ISD did not implement the consultant's recommendations to the extent practicable.

In addition, at least one judgment provision in Christy McD.'s case that required prospective action did not depend on her attending schools in Excelsior ISD. Item 6 requires Excelsior ISD to continue providing future transportation for so long as she is enrolled as a special education student *at Martinsville Independent School District. (See* Def.'s Mot. for Summ.J., Ex. B.) Clearly, Christy McD. would not be required to also attend schools in Excelsior ISD to claim the benefit of this provision.

Finally, no provisions of the Mary W. administrative judgment are expressly made contingent on her continuing *residence* in Excelsior ISD. For all these reasons, the court cannot conclude as a matter of law that enforcement of the TEA decrees is an entirely moot point solely because the two children did not attend Excelsior ISD schools following entry of the decrees. Thus, the court cannot determine at this stage that it definitely lacks

---

**13.** *See also Williams v. Federal Land Bank of Jackson,* 954 F.2d 774, 776 (D.C.Cir.1992) (quoting *Adams v. RTC,* 927 F.2d 348, 354–55

n. 16 (8th Cir.1991) (claim moot where it is absolutely certain that collection is impossible)).

subject matter jurisdiction due to mootness. Accordingly, Excelsior ISD is not entitled to summary judgment on this ground.

## 2. Release and Discharge

The TEA hearing officer entered both administrative judgments at issue in June, 1994. Later, the adult petitioners (plaintiffs in these actions) executed two documents in each case, titled respectively "Settlement Agreement and Full and Complete Release" and "Full and Final Release and Indemnity Agreement." For reasons not disclosed in the present record, the instruments relating to Christy McD. were executed approximately one month after the TEA decree on July 28, 1994, whereas the instruments pertaining to Mary W. were executed almost six months later on January 3, 1995.

The release instruments—though titled identically in both cases—contain substantial language differences. The first-in-time release documents relate to Christy McD. The "Settlement Agreement and Full and Complete Release" contains two references to the administrative TEA judgment. Paragraph 3, concerning monetary payments, contains the following language:

> ... such sums being in settlement of disputed claims, and in consideration for the full and complete release of all liability and claims made by William Eddins and wife, Evelyn Eddins, individually and as next friend of Christy ... *that were within the scope of the order of the hearing officer.*[14]

(Def.'s Mot. for Summ.J. at Ex. C) (emphasis added). Paragraph 4, a stereotypical release provision disclaiming wrongdoing or legal liability on the part of Excelsior ISD, states in part:

> ... William Eddins and wife, Evelyn Eddins, further agree and acknowledge that the promises make (sic) herein by the Excelsior [ISD] are made solely to

avoid the cost of further litigation *on the issues covered in the order.*[15]

*Id.* (emphasis added). The *other* release document in Christy McD.'s case, executed the same day, the "Full and Final Release and Indemnity Agreement," contains no reference to the TEA decree. *See id.* at Ex. E.

In Mary W.'s case, however, both release instruments, executed on January 3, 1995 by her mother, Sandy Willis, and William Eddins, next friend, specifically mention the TEA decree. Paragraph 1 of the "Settlement Agreement and Full and Complete Release" states in part:

> Sandy Willis and William Eddins, individually and as next friends of Mary [W.], releases and forever discharges ... Excelsior [ISD] ... from any and all legal and actual responsibility, claims, rights of action, causes of action, suits, debts, liabilities, *judgments,* demands, costs, attorneys' fees, expenses, and compensation whatsoever, *limited to all claims brought or which could have been brought and which are the scope of those issues raised in ... Special Education Hearing of the Texas Education Agency.*

*Id.* at Ex. D (emphasis added).

The other release instrument in Mary W.'s case, i.e., the "Full and Final Release and Indemnity Agreement," contains two nearly identical references to the TEA decree. The release clause, Paragraph 1, discharges Excelsior ISD from liability

> ... arising out of or having to do with ... the providing of comprehensive or special education services ... growing out of Mary W___'s enrollment as a student at ... Excelsior [ISD] ..., or any violation of the parent's or student's civil rights, ... *limited, however, to the scope of the Order entered by the Special Education Hearing Officer of the Texas Education Agency....*

14. The italicized portion was interlined by hand and initialed by three individuals.

15. Again, the italicized portion was interlined by hand and initialed by three individuals.

*Id.* at Ex. F (emphasis added). The indemnity clause, Paragraph 2, provides that Mary W.'s mother and next friend agree to indemnify and hold harmless Excelsior ISD:

> ... from any and all loss, damage and expense caused by the assertion ... after ... execution of this instrument of any other and further claims, demands, actions or causes of action ... against ... Excelsior [ISD] ... arising out of or having to do with ... the providing of comprehensive or special education services ... growing out of Mary W____'s enrollment as a student at ... Excelsior [ISD] ..., or any violation of the parent's or student's civil rights, ... *limited, however, to the scope of the Order entered by the Special Education Hearing Officer of the Texas Education Agency ...*

*Id.* (emphasis added.)

Excelsior ISD contends that the release instruments, all executed subsequent to entry of the TEA judgments, encompass release of all claims arising from the administrative orders. Thus, the documents constitute a bar to an action for enforcement of those orders. Plaintiffs reply that the releases pertain solely to Excelsior ISD's judgment obligation regarding monetary payments, and that the clauses referring to the TEA decrees merely reflect that plaintiffs reserved the ability to pursue other damage claims.

**16.** Under Texas common law, the construction of a release is governed by the general rules relating to the construction of contracts. *See Mutual Fire & Auto. Ins. Co. v. Green,* 235 S.W.2d 739, 742 (Tex.Civ.App.—Fort Worth 1950). In accordance with the general rules of contracts, whenever a release is before a court, the court will ascertain and give effect to the intention of the parties as of the time of execution of the release. *See Berry v. Guyer,* 482 S.W.2d 719 (Tex.App.—Houston [14th Dist.], writ ref n.r.e.1972). In ascertaining the intent of the parties, the release will be considered as a whole, *see Loy v. Kuykendall,* 347 S.W.2d 726 (Tex.App.—San Antonio 1961, writ ref n.r.e.), and read in the light of the surrounding circumstances, *see Crawford*

### A. *Principles of Analysis*

In earlier proceedings, the court determined that final judgment orders entered in an IDEA administrative proceeding define specific federal rights enforceable in a Section 1983 action. *See Eddins,* 1997 WL 470353 at *11–12. Normally, the release of federal claims is governed by federal law. *See Williams v. Phillips Petroleum Co.,* 23 F.3d 930, 935 (5th Cir. 1994). Unless a federal statute places specific requirements on waivers, the courts in this circuit apply a totality-of-the-circumstances analysis. *See id.* That analysis involves examination of whether a release addresses the claims at issue, whether adequate consideration was paid, whether the release was breached, and whether the release was invalid because of fraud, duress, or material mistake. *See id.* The governing circuit court of appeals also recognizes that "some other defense" (presumably one recognized under common law) may defeat a claim of release. *See id.*[16]

### B. *Application*

The parties have not cited, and the court's independent research fails to reveal that Congress has enacted special rules regarding waiver in Section 1983 cases, or in acting under IDEA or the Rehabilitation Act. Thus, the general "totality of circumstances" analysis is appropriate.

*v. Kelly Field Nat. Bank,* 733 S.W.2d 624 (Tex.App.—San Antonio 1987), including related documents, *see Mutual Fire & Auto. Ins. Co.,* 235 S.W.2d at 742.

The interpretation placed on the release by the parties themselves at the time of its execution may also be taken into consideration. *See* Tex.Jur. *Release* § 23 (3d.1989). Strict technical meanings of words used will be disregarded if contrary to the plain intention of the parties as evidenced by the release as a whole. *See Coleman v. Kenley,* 168 S.W.2d 926 (Tex.Civ.App.—Eastland 1943, writ ref'd). Further, general categorical releases are construed narrowly. *See Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 422 (Tex.1984).

The first analytical step is to determine whether the release instruments address the claims at issue. *See id.* In the case of Christy McD., the TEA administrative order is mentioned only in the instrument titled "Settlement Agreement and Full and Complete Release." Paragraph 3, where the TEA order is first mentioned, contains a release limited in scope to the *monetary payment* required under the TEA order. There is no specific mention of the *prospective relief* required by the TEA order. Paragraph 4, while reciting more broadly the parties' intent to settle and avoid further litigation on issues covered by the order, contains no operative release provisions.

Under these circumstances, one cannot conclude as a matter of law that the Christy McD. release was intended to cover all of Excelsior ISD's obligations under the TEA order. There remains a genuine issue of material fact as to whether the release was intended to apply to all provisions of the order or merely to the requirement for a monetary payment.

A much closer question is presented in the case of Mary W. First, the release language in the "Settlement Agreement and Full and Complete Release" executed in her behalf is not confined to a paragraph dealing specifically with the requirement for a monetary payment. Second, the release language expressly states intent to release Excelsior ISD from *judgments* within the scope of the TEA administrative proceedings.

' Notwithstanding this, a genuine issue of material fact exists as to whether the Mary W. release addresses the TEA order's provisions requiring prospective relief. First, there is no specific reference to matters awaiting future action. Second, the other references to the TEA proceedings in the separate document entitled "Full and Final Release and Indemnity Agreement" do not contain any expression of intent to release Excelsior ISD from its judgment obligations. Indeed, these provisions are just as easily construed as intended to reaffirm Mary W.'s rights to prospective action.

Under these circumstances, one again cannot conclude as a matter of law that the Mary W. release was intended to cover all of Excelsior ISD's future obligations under the TEA order. There remains a genuine issue of material fact as to whether the release was intended to apply to all provisions of the order or merely to the requirement for a monetary payment.

Even were the release instruments in both cases to be construed as addressing the TEA orders' provisions for prospective relief, the totality-of-the-circumstances analysis requires the court to examine several other factors.[17] One factor is whether the releases are supported by adequate consideration. *See Williams,* 23 F.3d at 935. The current record is devoid of any evidence that new or additional consideration was paid by Excelsior ISD and received by plaintiffs when the release instruments were executed. The record reflects only that Excelsior ISD tendered the cash payments due under the TEA orders. It defies common sense to suppose that, upon Excelsior ISD's compliance with only one provision, i.e., the monetary payment provision, plaintiffs would release their remaining rights under the TEA orders absent new or additional consideration.

In both cases, a genuine issue of material fact exists as to whether the releases address plaintiffs' rights regarding prospective action under the TEA orders. In both cases, a genuine issue of material fact exists as to whether the releases, if construed to encompass those rights, are supported by adequate consideration. Thus, summary judgment on Excelsior ISD's af-

---

**17.** *See W.B. v. Matula,* 67 F.3d 484, 497–98 (3d Cir.1995) (holding that in cases where a person allegedly waives civil rights claims, the court "will inquire into the totality of the circumstances surrounding execution of the agreement, and [the court] will decline to enforce the agreement unless its execution was knowing and voluntary.").

706

firmative defense of release and discharge is not appropriate.

### Recommendation

Excelsior ISD's motion for summary judgment should be denied because there are genuine issues of material fact as to whether: (a) these actions are moot and (b) plaintiffs' causes of action to enforce administrative orders of the Texas Education Agency are barred by prior releases.

### Objections

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. *See* 28 U.S.C. § 636(b)(1) and FED.R.CIV.P. 6(a), 6(b), and 72(b).

A party's failure to object bars that party from (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *see Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

January 28, 2000.